IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS

---

MICHAEL GRECCO PRODUCTIONS, INC.,

Plaintiff,

v.

BLOCK CLUB CHICAGO NFP d/b/a DNAINFO.COM,

Defendant.

Case No. 1:25-cv-11155

Hon. Franklin U. Valderrama

---

**DEFENDANT'S MEMORANDUM IN SUPPORT OF ITS MOTION FOR JUDGMENT ON THE PLEADINGS**

NOW COMES Defendant Block Club Chicago NFP ("Defendant" or "Block Club"), through its attorneys Wagenmaker & Oberly, seeking dismissal of Plaintiff Michael Grecco Productions, Inc.'s ("Plaintiff" or "Grecco") Complaint (Dkt. 1) pursuant to Fed. R. Civ. P. 12(c).

As outlined below, Defendant's use of the photograph of Chris Farley at dispute in this lawsuit ("Photograph") qualifies as "fair use" under that well-established doctrine. Plaintiff licensed use of the Photograph *expressly* "for the publicity of the production, 'I Am Chris Farley,'" which afforded "unlimited, worldwide, use in press kit, news media reproduction and unpaid editorial insertion rights." (Dkt. 14-1, Ex. E ("License").) Additionally, the article ("Article") (Dkt. 1-2) referenced in Grecco's Complaint that included the Photograph has received virtually no views. These facts prove the most important factor in a fair use defense – that there was no potential adverse market effect due to Block Club's alleged use. Even more, Block Club's use was not "commercial" since Block Club is an IRS-recognized 501(c)(3), tax-exempt organization whose

mission is "not to increase its own profits." *Philpot v. Media Rsch. Center Inc.*, 279 F. Supp. 3d 708, 718 (E.D. Va. 2018). Finally, the nature and use of the Photograph in this instance was contemplated in Grecco's License Agreement.

Additionally, the Court should grant Defendant's Motion and deny Grecco's claim as barred by the statute of limitations based on evidence in the pleadings including Plaintiff's status as a prolific and sophisticated litigator who aggressively polices his copyrights.

## I. Relevant Background

Block Club is an IRS recognized 501(c)(3) nonprofit organization formed on January 2, 2018. (Dkt. 1 ¶ 2; Dkt. 14-1, Exhibits A and B.) As stated in its Articles of Amendment filed October 25, 2018:

> Block Club is organized and operated exclusively for educational purposes in accordance with Section 501(c)(3) of the Internal Revenue Code. More specifically, Block Club is organized to operate an educational news site devoted to researching and disseminating essential reports, stories, and cultural information specific to Chicago's diverse neighborhoods in order to help Chicago citizens and the broader public be better informed and knowledgeable of neighborhood-specific issues in their communities. (Ex. 1.)[1]

On or around June 6, 2018, Block Club entered into a grant agreement with New York Public Radio where Block Club "acquired certain intellectual property assets" of DNAinfo New York and DNAinfo Chicago (collectively, "DNAinfo"). (Dkt. 14-1, Ex. C.) "Block Club received these materials based on its express commitment to use the materials for non-profit purposes in connection with its local reporting efforts and based on the grantor's express representation that it had full power and authority to transfer all materials." (*Id.*, Ex. D ¶ 4.)

[1] The Articles of Amendment filed with the Secretary of State, inadvertently omitted from Dkt. 14-1, can be considered at this stage of the proceedings by the court taking judicial notice of the Articles as a public record. *United States v. Wood*, 925 F.2d 1580, 1582 (7th Cir. 1991).

The Article was originally published over ten years ago on July 23, 2015, on DNAinfo's website. (Dkt. 1-2.) The Article was written to promote and provide a critical review of an upcoming screening of the documentary, *I Am Chris Farley*, at a Chicago-based comedy club. (Dkt. 14-1, Ex. D ¶ 5.) Plaintiff licensed the Photograph to Network Entertainment Inc. "for the publicity of the production, 'I Am Chris Farley.'" (*Id*., Ex. E.) The License Agreement afforded "unlimited, worldwide, use in press kit, news media reproduction and unpaid editorial insertion rights … for the promotion of the documentary." (*Id*.)

## II. Legal Standard

Federal Rule of Civil Procedure 12(c) provides that "[a]fter pleadings are closed—but early enough not to delay trial—a party may move for judgment on the pleadings." "Judgment on the pleadings is appropriate when there are no disputed issues of material fact and it is clear that the moving party … is entitled to judgment as a matter of law." *Unite Here Local 1 v. Hyatt Corp.*, 862 F.3d 588, 595 (7th Cir. 2017). When appropriate, courts can dismiss claims at the pleading stage based on a fair use defense. *See Brownmark Films, LLC v. Comedy Partners*, 682 F.3d 687 (7th Cir. 2012) (upholding granting of Rule 12(b) motion dismissing copyright claim based on fair use defense); *see also Galvin v. Ill. Republican Party*, 130 F. Supp. 3d 1187, 1192 (N.D. Ill. 2015) (court may conclude as a matter of law that the challenged use qualifies as fair use when the facts on record are sufficient to evaluate each statutory factor) (citing *Harper & Row Publ'rs, Inc. v. Nat'l Enters.*, 471 U.S. 539, 560 (1985)).

## III. Legal Argument

### A. Defendant's Use of the Photograph Is Protected Under the Fair Use Doctrine.

In determining whether the fair use doctrine applies, courts consider: "(1) the purpose and character of the use, including whether such use is of a commercial nature or is for nonprofit educational purposes; (2) the nature of the copyrighted work; (3) the amount and substantiality of

the portion used in relation to the copyrighted work as a whole; and (4) the effect of the use upon the potential market for or value of the copyrighted work." 17 USCA § 107. "Since fair use defies precise definition, courts must analyze fair use defenses on a case-by-case basis, keeping in mind the goal of copyright protection at large—that is, to promote the Progress of Science and useful Art." *Galvin*, 130 F. Supp. 3d at 1191. Each factor weighs in favor of fair use here.

### 1. Block Club's Use Had No Effect on the Potential Market or Value of the Photograph.

When evaluating market effect of an alleged infringement, courts consider whether the alleged use serves as a substitute in the market for the original work and its legally protected derivatives. *Galvin*, 130 F. Supp. 3d at 1195. The U.S. Supreme Court as well as the Seventh Circuit have indicated that market effect is the most important. *Harper & Row*, 471 U.S. at 566 (market effect "is undoubtedly the single most important element of fair use"); *Kienitz v. Sconnie Nation LLC*, 766 F.3d 756, 758 (7th Cir. 2014).

The Article in question has received virtually no website traffic. Since 2020, the Article was viewed 57 times as of the date of Defendant's Answer.[2] (Dkt. 14-1, Ex. D ¶ 9.) This compares to well over 12,000 views within a 7-day period for a typical article published by Block Club. (*Id.* ¶ 8.) Where the article receives close to zero views, there can be no possible adverse market effect. Furthermore, given Plaintiff's Complaint and inquiries from his counsel proceeding his Complaint, many views since 2020 likely relate to this litigation rather than non-parties accessing the Article.

Any possible market effect that may be relevant here was contemplated and accounted for by Grecco when he licensed use of the Photograph "for the publicity of the production" of "I am Chris Farley." (Dkt. 14-1, Ex. E.) The License expressly affords "unlimited, worldwide, use in … news media reproduction and unpaid editorial insertion rights … for the promotion of the

[2] Block Club does not have access to website traffic of the Article prior to 2020.

documentary 'I Am Chris Farley'". (*Id.*) The Article was an editorial piece "for the promotion of the documentary." (*Id.*; *see also* Dkt. 14-1, Ex. D ¶ 5.) Indeed, the Article "was written solely to promote the screening and to provide a critical review of a documentary about the life of Chris Farley at a popular comedy club in Chicago." (*Id.*)

It is obvious that the purpose of the License was to allow the producer to distribute copies of the documentary (which incorporated the Photograph) to media outlets, like DNAinfo, so that outlets would publish articles about it and promote it. That is what DNAinfo did. Where a license agreement is entered for use of a Photograph and the purpose of the license as contemplated in the agreement includes use of the Photograph, there can be no adverse market effect contemplated. *Glovaroma, Inc. v. Maljack Prods., Inc.*, 71 F. Supp. 2d 846, 855 (N.D. Ill. 1999) (quoting *I.A.E., Inc. v. Shaver*, 74 F.3d 768, 775 (7th Cir. 1996) ("existence of a license, exclusive or nonexclusive, creates an affirmative defense to a claim of copyright infringement")).

With the License accounting for any possible adverse market effect and virtually no website traffic that could render an adverse market effect, this factor – the most important according to the Supreme Court and Seventh Circuit – weighs heavily in Block Club's favor.

**2. Defendant's Use Was Not Commercial in Nature.**

Courts should also consider the "purpose and character of the use, including whether such use is of a commercial nature or is for nonprofit educational purposes." § 107(1). This includes, "whether the user stands to profit from exploitation of the copyrighted material without paying the customary price." *Harper & Row*, 471 U.S. at 562.

Block Club did not use the Photograph for commercial purposes. Indeed, it *could not* do so where Block Club is an IRS-approved 501(c)(3) nonprofit organization. *See Philpot*, 279 F. Supp. 3d at 718 (finding 501(c)(3) non-profit defendant's use of disputed photographs not "commercial in nature" where non-profit's mission is "not to increase its own profits."). Block

Club's purpose is "to operate an educational news site devoted to researching and disseminating essential reports, stories, and cultural information . . . to help Chicago citizens and the broader public be better informed and knowledgeable" (Ex. 1), not to increase its own profits. "At no time did Block Club receive any income or other revenue through the alleged use of the Photograph" in the Article at issue, "or for any other alleged use of the Photograph." (Dkt 14-1, Ex. D ¶ 7.) Although Block Club offers paid subscriptions and receives advertising revenue (and also receives donations and grants) (*Id.* ¶ 6), none of these correlate to Block Club's alleged use or display of the Photograph, particularly since the Article was published by another entity (DNAinfo) three years before Block Club came into possession and Block Club received DNAinfo's assets "based on its express commitment to use the materials for non-profit purposes." (*Id.* ¶ 4.) Because there was no commercial use, this factor weighs in favor of fair use.

### 3. The Photograph Was Licensed as a Documentary Cover For The Express Purpose of Media Reproduction.

The next factor, "nature of the copyrighted work" § 107(2), requires the court to analyze the "value of the materials used." *Galvin*, 130 F. Supp. 3d at 1194 (citing *Campbell v. Acuff-Rose Music, Inc.*, 510 U.S. 569, 576 (1994)). In so doing, courts consider whether the original work is creative or factual in nature and whether it was published at the time of the infringing use. *Id.* (citing *Harper & Row*, 471 U.S. at 563-64). This "factor calls for recognition that some works like fiction are closer to the core of intended copyright protection than others like new broadcasts or factual compilations, with the consequence that fair use is more difficult to establish when the former works are copied." *FameFlynet, Inc. v. Jasmine Enters., Inc.*, 344 F. Supp. 3d 906, 912-13 (N.D. Ill. 2018). The fair use factors are not to be considered in isolation from each other. *Campbell*, 510 U.S. at 578.

The "nature" of the Photograph in this case is that it was used as the cover for a

documentary about the person in the Photograph, Chris Farley. The Photograph was licensed to the documentary producer *expressly* for this purpose as well as for use in "news media reproduction." (Dkt. 14-1, Ex. E.) Grecco's License Agreement encompasses the use he now objects to through his lawsuit – "unlimited, worldwide, use … for the promotion of the documentary 'I Am Chris Farley.'" (Dkt. 14-1, Ex. E.) The Article was written specifically and "solely to promote screening" of the documentary (*Id.*, Ex. D ¶ 5) – a use expressly provided for in the documentary producer's license. (*Id.*, Ex. E.)

Also, the Photograph is essentially factual (a picture of Chris Farley), as is the Article. This court granted a defendant's fair use affirmative defense at the motion to dismiss stage involving a photograph by a professional photographer (like Grecco) stating, "[w]hatever artistry he contributed (by way of the angle, framing, or other composition of the Photograph) could not plausibly outweigh its factual nature." *Galvin*, 130 F. Supp. 3d at 1195. The situation here is not one where an infringer capitalizes on and profits from a creative's work, and this factor weighs in Block Club's favor.

**4. The Amount and Substantiality of Defendant's Use.**

The final factor examines whether the amount and substantiality of the portion used was reasonable in relation to the copyrighted work as a whole. § 107(3). There is no *per se* rule against using, in the name of fair use, an entire work, and a reproduction can include substantial portions of the original. *Galvin*, 130 F. Supp. 3d at 1195 (quoting *Chicago Bd. of Educ. v. Substance, Inc.*, 354 F.3d 624, 629 (7th Cir. 2003)). Although the whole Photograph appeared in DNAinfo's Article, "wholesale copying does not preclude fair use." *FameFlynet*, 344 F. Supp. 3d at 913 (citing *Harper & Row*, 471 U.S. at 564-65). The Article displayed the cover of the documentary which was a licensed copy of the Photograph. Here, where Grecco licensed the entire Photograph to Network

Entertainment Inc. (not a portion of it) for use as the documentary cover, and where it would have made little sense for DNAinfo (or any media outlet) to use only a portion of the Photograph given that Mr. Farley's image constitutes most of the image (Dkt. 1-1), this factor is inapposite.

In this case, each fair use factor weighs in favor of Block Club. Further, facts in the pleadings are sufficient to evaluate each statutory factor, and there is no contrary evidence. Therefore, the court can grant Block Club's fair use defense as a matter of law. *Galvin*, 130 F. Supp. 3d at 1192.

**B. The Discovery Rule Bars Plaintiff's Claim.**

Grecco's copyright infringement claim also fails based on the statute of limitations. Plaintiff's claim must fail where Grecco, a prolific litigator, should have become aware of the alleged infringement significantly sooner. The Copyright's Act statute of limitations provides that "[n]o civil action shall be maintained under the provisions of this title unless it is commenced within three years after the claim accrued." 17 U.S.C § 507(b). "[T]he copyright statute of limitations starts to run when the plaintiff learns, or should as a reasonable person have learned, that the defendant was violating his rights." *Chic. Bldg. Design, P.C. v. Mongolian House, Inc.*, 770 F.3d 610, 614 (7th Cir. 2014). Most courts, including the Seventh Circuit, adopt a discovery rule "which starts the limitations period when the plaintiff discovers, or with due diligence should have discovered, the injury that forms the basis for his claim." *Id.* (citing *Petrella v. Metro-Goldwyn-Mayer, Inc.*, 572 U.S. 663 (2014)).

Grecco is a prolific litigator as evidenced by the 150 copyright infringement cases he has filed in federal court. (Dkt. 14-1, Ex. H.) Grecco has filed a plethora of copyright infringement cases since 2016 and is indisputably a sophisticated and aggressive litigator seeking out alleged infringement of his photographs and filing lawsuits against alleged infringers.

Grecco registered the Photograph with the Register of Copyrights in 1999. (Dkt. 1-1.) He entered his licensing agreement with Network Entertainment Inc. for use of the Photograph in May 2015. (Dkt. 14-1, Ex. E.) DNAinfo's Article was published two months later in July 2015. (Dkt. 1-2.) Ten years have since passed. Grecco should obviously have known that media outlets, like DNAinfo, were publishing articles promoting the documentary (which included the Photograph) since his 2015 license *expressly provided for this*. If Grecco somehow believed that these articles constituted infringement, he could have – and should have – filed suit immediately or at least within the two-year statute of limitations. Instead, he waited ten years – far longer than the statute of limitations in 17 U.S.C § 507(b) provides. Because a reasonable person would have learned that his rights were being violated, and because Grecco is far more sophisticated that a "reasonable person", his claims are time-barred. *Chic. Bldg. Design*, 770 F.3d at 614.

## IV. Conclusion

Grecco attempts to recover for copyright infringement based on alleged use by Block Club's predecessor, DNAinfo, that Grecco expressly accounted for ten years ago in his License to Network Entertainment Inc. The Article and corresponding webpage, which Block Club inherited pursuant to a grant agreement, has had minimal views and generated no income for Block Club which – as a non-profit, 501(c)(3) entity – *cannot* operate for profit. Any conceivable market effect resulting from Block Club's possession or display of the Photograph was accounted for by Grecco's license to the documentary producer which provided for distribution of the documentary (and Photograph) for "news media reproduction and . . . the promotion of the documentary." (Dkt 14-1, Ex. E.) Grecco was aware of this use since 2015 when he granted the license. If he believed the resulting use by media outlets, including DNAinfo and Block Club, constituted infringement, he had two years to bring his claim. He failed to do so, and any claim is now barred.

Block Club's affirmative defenses of fair use and statute of limitations warrant dismissal

of Grecco's claim at this stage based on conclusive evidence in the pleadings, absence of any contrary evidence, and supporting case law that demonstrate 1) Block Club's non-commercial use had zero market effect, and 2) Grecco should have been aware of any possible infringement much sooner.

For these reasons, Block Club respectfully requests that its motion for judgment on the pleadings be granted and Grecco's claim for copyright infringement be dismissed WITH PREJUDICE.

Dated: February 5, 2026

By: Clyde A. Taylor
Clyde Taylor

Clyde Taylor, ARDC #6333452
WAGENMAKER & OBERLY PLLC
Attorneys for Defendant BLOCK CLUB CHICAGO NFP d/b/a DNAINFO.COM
53 W. Jackson Blvd, Suite 1734
Chicago, IL 606014
312-626-1600
clyde@wagenmakerlaw.com