**UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| MICHAEL GRECCO PRODUCTIONS, INC.,<br><br>Plaintiff,<br><br>v.<br><br>BLOCK CLUB CHICAGO NFP d/b/a DNAINFO.COM,<br><br>Defendant. | No. 1:25-cv-11155<br>Judge Franklin U. Valderrama |

**ORDER**

Plaintiff Michael Grecco Productions, Inc. (Grecco) is a celebrity photography/production agency owned by photojournalist Michael Grecco. R. 1, Compl.[1] Defendant Block Club Chicago NFP d/b/a DNAInfo.com (Block Club) is a nonprofit online news organization. *Id.* Grecco sued Block Club for copyright infringement under 17 U.S.C. § 501, after Block Club published a photograph of actor/comedian Chris Farley without Grecco's permission. *Id.* Block Club now moves for judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c). Mot. For the following reasons, the Court grants Block Club's motion.

**Background**[2]

Grecco took a photograph of American actor and comedian Chris Farley titled "19940824_Farley_Chris_MGP_0001_Sepia" (Photograph). Compl. ¶ 12. Grecco

[1]Citations to the docket are indicated by "R." followed by the docket number or filing name, and, where necessary, a page or paragraph citation.
[2]The Court accepts as true all facts in the complaint and draws all reasonable inferences in favor of Grecco. *See St. John v. Cach, LLC*, 822 F.3d 388, 389 (7th Cir. 2016).

registered the Photograph with the Register of Copyrights on September 20, 1999. *Id.* ¶ 13 (citing R. 14-1, Compl. Exh. A). On May 28, 2015, Grecco signed a licensing agreement with a documentary producer for the Photograph (Licensing Agreement). R. 14-1, Ans. Exh. E, License Agrmt.[3] The Licensing Agreement allowed the Photograph to be used to promote the documentary, "I am Chris Farley." *Id.* Furthermore, the Licensing Agreement allowed for "[n]on-exclusive, unlimited, worldwide, use in press kit, news media reproduction and unpaid editorial insertion rights" for the promotion of the "I am Chris Farley" documentary. *Id.*

Block Club owns and operates an online news platform covering local events and stories within Chicago's various neighborhoods. Compl. ¶ 15. Block Club publishes articles on its website, including those previously owned and operated by other non-profit tax-exempt entities now owned by Block Club. R. 14, Ans. ¶ 16. Grecco alleges that on July 23, 2015, Block Club, through its website DNAinfo.com, published an article titled "Chris Farley Documentary Celebrates Career That Started, Ended in Chicago." Compl. ¶ 17; Compl. Exh. B, Article. The article discusses the upcoming documentary and used the Photograph, as shown in part below. *Id.*

[3]For the reasons discussed below, the Court finds it appropriate to consider the Licensing Agreement on the motion for judgment on the pleadings. *See infra* Analysis.I.


Chris Farley Documentary Celebrates Career That Started, Ended in Chicago

By Mark Konkol | July 23, 2015 5:35am | *Updated on July 23, 2015 8:34am*
@KonkolsKorner

"I Am Chris Farley" â€" the first feature-length documentary film to take a heartbreakingly close look at Farleyâ€™s ris...

I Am Chris Farley

Recommended

ROSELAND »
Police Hiring Process Discriminates Against Blacks, Latinos: Ald. Beale

PILSEN »
Brooks Blair Golden Dead: Longtime Chicago and Milwaukee Artist Mourned

BEVERLY »
Squatter Landlords Don't Recognize U.S. Government, Prosecutors Say

DOWNTOWN »
Ald. Willie Cochran Collapses During City Council Hearing

*Id.* Block Club denies that it displayed or published the Photograph on its website on July 23, 2015, as it was not formed as a corporation and did not have a website to display or publish any articles. Ans. ¶ 17.

Grecco discovered in September 2023 that Block Club used the Photograph. Compl. ¶ 22. Grecco sued Block Club on September 16, 2025, alleging copyright infringement under 17 U.S.C. § 501 for Block Club's use of the Photograph in the Article. *See generally* Compl. Block Club filed an answer and asserted two affirmative defenses. Ans. at 15–17. The first is a statute of limitations defense and the second a fair use defense. *Id.*

Block Club now moves for judgment on the pleadings under Federal Rule of Civil Procedure Rule 12(c). R. The fully briefed motion is before the Court.

## Legal Standard

"After the pleadings are closed . . . a party may move for judgment on the pleadings." Fed. R. Civ. P. 12(c). "Pleadings include the complaint, the answer, and any written instruments attached as exhibits." *Federated Mut. Ins. Co. v. Coyle Mech. Supply Inc.*, 983 F.3d 307, 312–13 (7th Cir. 2020) (cleaned up); Fed. R. Civ. P. 10(c) ("A copy of a written instrument that is an exhibit to a pleading is a part of the pleading for all purposes."). The standard on a motion for judgment of the pleadings is the same as a motion to dismiss, the only difference is timing. *Federated Mut. Ins. Co.* 983 F.3d at 313. As such, the court views the facts and inferences in the light most favorable to the nonmovant. *Scottsdale Ins. Co. v. Columbia Ins. Grp., Inc.*, 972 F.3d 915, 919 (7th Cir. 2020).

In resolving a motion for judgment on the pleadings, the court is "confined to the matter presented in the pleadings, and [it] must consider those pleadings in the light most favorable to [the non-moving party]." *United Here Loc. 1 v. Hyatt Corp.*, 862 F.3d 588, 595 (7th Cir. 2017). "When a [party] moves for judgment on the pleadings, the motion should not be granted unless it appears beyond doubt that the nonmovant cannot prove facts sufficient to support its position, and that the [moving party] is entitled to relief." *See Federated Mut. Ins. Co.*, 983 F.3d at 312–13 (citing *Scottsdale Ins. Co. v. Columbia Ins. Grp., Inc.*, 972 F.3d 915, 919 (7th Cir. 2020)). "Thus to succeed, the moving party must demonstrate that there are no material issues of fact to be resolved." *Id.* (citing *N. Indiana Gun & Outdoor Shows, Inc.*, 163 F.3d at 452). "District courts should not allow motions for judgment on the

pleadings to deprive the non-moving party of the opportunity to make its case." *Id.* (citing *Johnson v. Revenue Mgmt. Corp.*, 169 F.3d 1057, 1060 (7th Cir. 1999)). As with a motion to dismiss, the court views all facts and inferences in the light most favorable to the non-moving party. *St. John v. Cach, LLC*, 822 F.3d 388, 388 (7th Cir. 2016). However, the court need not accept as true any legal assertions. *Vesely v. Armslist LLC*, 762 F.3d 661, 664–65 (7th Cir. 2014). "Judgment on the pleadings is proper where there are no disputed issues of material fact, and the moving party is clearly entitled to judgment as a matter of law." *Artisan v. Burlington Ins. Co.*, 90 F. 4th 893, 896 (7th Cir. 2024).

## Analysis

### I. Consideration of Exhibits

As a threshold issue, Grecco argues that Block Club impermissibly relies on the exhibits attached to its answer. R. 26, Resp. at 3. According to Grecco, the Court should not consider Block Club's exhibits when evaluating Block Club's motion for judgment on the pleadings. *Id.* (citing *Sartin v. Chula Vista, Inc.*, 2019 WL 2746210, at *4–5 (E.D. Wis. July 1, 2019); *Perkins v. Town of St. John*, 2026 WL 237443, at *2–3 (N.D. Ind. Jan. 29, 2026)). Block Club, on the other hand, asserts that the Court may consider its exhibits, as the pleadings include documents attached as exhibits to the answer. R. 27, Reply at 3 (citing *N. Indiana Gun & Outdoor Shows, Inc. v. City of S. Bend*, 163 F.3d 449, 452 (7th Cir. 1998); *U.S. Specialty Ins. Co. v. Vill. of Melrose Park*, 455 F. Supp. 3d 681, 687 (N.D. Ill. 2020)).

Rule 12(c) permits judgment based on the pleadings alone. *N. Indiana Gun & Outdoor Shows*, 163 F.3d at 452. For the purposes of a Rule 12(c) motion, the Seventh Circuit has held that "pleadings include the complaint, the answer, and any written instruments attached as exhibits," such as affidavits, letters, contracts, and loan documentation. *Id.* at 452–53; *see also United States v. Wood*, 925 F.2d 1580, 1582 (7th Cir. 1991); Fed. R. Civ. P. 10(c) ("A copy of a written instrument that is an exhibit to a pleading is a part of the pleading for all purposes.").

Block Club understandably relies on *Northern Indiana Gun & Outdoor Shows* for the proposition that the Court may consider its exhibits on a Rule 12(c) motion because the exhibits were attached to the answer. Reply at 2–3 (citing *N. Indiana Gun & Outdoor Shows*, 163 F.3d at 453). As the court in *Sartin*, cited by Grecco, however, points out, in *N. Indiana Gun & Outdoor Shows*, the question of whether a court may rely on exhibits attached to the answer was not explicitly before the court, because in that case, the district court did not consider the letter attached to the defendant's answer, but rather considered only attachments to the complaint when granting the motion for judgment on the pleadings. *Sartin*, 2019 WL 2746210, at *3 (citing *N. Indiana Gun & Outdoor Shows*, 163 F.3d at 453–54). So, the Seventh Circuit's statement in a footnote that it could consider the plaintiff's complaint and attachments and the defendant's "answer and attachment" was *dicta* only, since it did not consider the letter in its ruling. *N. Indiana Gun & Outdoor Shows*, 163 F.3d at 453 n.5.

The *Sartin* court acknowledges that numerous district courts have relied on *N. Indiana Gun & Outdoor Shows* to "rely on documents attached to an answer to grant a defense motion for judgment on the pleadings." *Id.* at *4. Recognizing that *Sartin* is not binding authority, the Court finds persuasive, however, the court's reasoning that there is no plausible reason to allow a defendant to answer the complaint, "append to the answer whatever documents it wants, and then move for judgment on the pleadings," which would create a "a material and consequential distinction between motions under Rules 12(b) and 12(c)." *Id.* at *5. That said, it is hard to get around the plain language of *N. Indiana Gun & Outdoor Shows*, 163 F.3d at 453–54. But the Court need not definitely resolve the issue, because the Court agrees with Block Club that it may take judicial notice of public records, and finds that the public records attached to Block Club's answer support granting the motion. Reply at 3; *see also* Ans. ¶ 19; *Ennenga v. Starns*, 677 F.3d 766, 774 (7th Cir. 2012) ("Taking judicial notice of matters of public record need not convert a motion to dismiss into a motion for summary judgment."); *Deicher v. City of Evansville, Wis.*, 545 F.3d 537, 541 (7th Cir. 2008) (it is proper to take judicial notice of court documents).

Here, Block Club relies on seven exhibits in its motion. *See generally* R. 20-1, Memo. Five of the exhibits are public records which may be subject to judicial notice. These exhibits include: (1) Block Club's Original Articles of Incorporation, Ans. Exh. A, Arts. Inc.; (2) Block Club's Nonprofit Determination Letter, *id.* Exh. B, NFP Letter; (3) the Licensing Agreement, License Agrmt.; (4) Grecco's Court Filings, Ans. Exh. H at 2, Pl. Court Filings; and (5) Block Club's 2018 Addendum to its Articles of

Incorporation, R. 20-2, Memo. Exh. 1, NFP Arts. The remaining two exhibits, the Publisher's Declaration and the Grant Agreement, are not public records, but Block Club asserts that their authenticity cannot reasonably be disputed and the exhibits do not introduce a factual dispute. Ans. Exhs. C, D. Block Club concedes that if the Court finds the Publisher's Declaration or Grant Agreement improper, then those exhibits should be excluded rather than converting this motion into one for summary judgment under Rule 56. Reply at 3.

As stated above, matters subject to judicial notice can be considered even though attached to the answer rather than the complaint. *See Ennenga*, 677 F.3d at 773. The Court therefore will take judicial notice of the public record exhibits cited in Block Club's answer; namely: the Original Articles of Incorporation, the Nonprofit Determination Letter, the Licensing Agreement, Grecco's Court Filings, and the 2018 Addendum to Block Club's Articles of Incorporation. The Court declines to consider the documents attached to Block Club's answer that are neither subject to judicial notice nor incorporated into the complaint. *See Sartin*, 2019 WL 2746210, at *5. As such, the Court will not consider the Grant Agreement or the Publisher's Declaration. Ans. Exhs. C, D.

## II. Affirmative Defenses

Grecco claims that Block Club infringed Grecco's copyright by reproducing, distributing, and publicly displaying the Photograph without authorization from Grecco. Compl. ¶¶ 28–29. Block Club does not dispute that its actions constitute

copyright infringement but instead asserts the affirmative defenses of the statute of limitations and fair use.

Under Rule 12(c), Block Club bears the burden of demonstrating that there are no material issues of fact to be resolved and that Block Club is clearly entitled to judgment as a matter of law. *See Federated Mut. Ins. Co. v. Coyle Mech. Supply Inc.*, 983 F.3d 307, 312–13 (7th Cir. 2020) (citing *N. Ind. Gun & Outdoor Shows*, 163 F.3d at 452); *see also Artisan v. Burlington Ins. Co.*, 90 F. 4th 893, 896 (7th Cir. 2024). Furthermore, although the statute of limitations and fair use are affirmative defenses, they may be resolved on the pleadings when all relevant facts are properly before the Court. *Chi. Bldg. Design, P.C. v. Mongolian House, Inc.*, 770 F.3d 610, 613–14 (7th Cir. 2014); *Galvin v. Ill. Republican Party*, 130 F. Supp. 3d 1187, 1191–92 (N.D. Ill. 2015). The Court starts with Block Club's statute of limitations argument.

### *A. Statute of Limitations*

Block Club moves to dismiss Grecco's copyright infringement claim as time-barred under 17 U.S.C. § 507(b). Memo. at 8–9. The Copyright Act's statute of limitations provides that "[n]o civil action shall be maintained under the provisions of this title unless it is commenced within three years after the claim accrued." 17 U.S.C. § 507(b). Accrual begins when the plaintiff learns, or should, as a reasonable person would have learned, that the defendant was violating their rights. *Chic. Bldg. Design*, 770 F.3d at 614. Under Rule 12(c), a statute of limitations defense may be granted only where the allegations in the complaint itself set forth everything necessary to satisfy the affirmative defense. *Id.* Put another way, for a motion to

dismiss based on the statute of limitations to be successful, the plaintiff must affirmatively plead themself out of court. *Id.* at 613–14.

In this case, Grecco filed its lawsuit on September 16, 2025. *See* Compl. Grecco alleges that it learned "through its ongoing diligent efforts" of the copyright infringement in September 2023. Compl. ¶ 22. Block Club posits that Grecco should have discovered the alleged infringement sooner. Memo. at 8–9 (citing *Chic. Bldg. Design*, 770 F.3d at 614). Block Club contends the alleged infringement occurred on July 23, 2015, which was the date the article was published. *Id.* at 9 (citing Article). According to Block Club, Grecco should have known that media outlets, like Block Club, were publishing articles promoting the Chris Farley documentary using the Photograph, soon after Grecco signed the Licensing Agreement in May 2015. *Id.* at 9 (citing License Agrmt.). The way Block Club sees it, Grecco, a sophisticated litigator that has filed numerous copyright infringement cases, should have discovered the alleged infringement significantly earlier than 2023. *Id.* at 8–9 (citing Pl. Court Filings). Thus, concludes Block Club, the statute of limitations period has run on any claim Grecco has against Block Club. *Id.* at 9.

Grecco responds that its claim is not barred by the statute of limitations as it alleges that it did not and could not have reasonably discovered the infringement prior to September 2023. Resp. 11–12. The Court agrees with Grecco.

Block Club is correct that the Seventh Circuit has adopted a discovery rule, under which the limitations period starts when "the plaintiff discovers, or with due diligence should have discovered, the injury that forms the basis for his claim." Memo.

at 8 (quoting *Chic. Bldg. Design*, 770 F.3d at 614) (cleaned up). But in *Chic. Bldg. Design*, the Seventh Circuit also rejected an "inquiry notice" standard, in which the statute of limitations period begins at "the point at which a plaintiff possesses a quantum of information sufficiently suggestive of wrongdoing that he should conduct a further inquiry." 770 F.3d at 615. Block Club cites no authority for the proposition that Grecco had "actual or constructive" notice of the infringement on the date Grecco signed the Licensing Agreement. *See id.* Block Club has therefore waived the argument. *See White v. United States*, 8 F.4th 547, 552 (7th Cir. 2021) ("perfunctory and undeveloped arguments, as well as arguments that are unsupported by pertinent authority, are waived."). Additionally, its statute of limitations defense rests on unsupported speculation. Namely, that Grecco should have discovered the infringement sooner. The fact that Grecco has a history of copyright infringement litigation, without more, does not mean that Grecco should have discovered the alleged infringement earlier simply because Grecco has filed numerous other copyright lawsuits. Block Club has the burden of establishing its affirmative defense and fails to do so.

Accordingly, taking as true the facts in Grecco's complaint, and drawing all reasonable inferences in Grecco's favor, the Court cannot say that Grecco has pled itself out of court. Grecco alleges that it discovered the alleged copyright infringement in September 2023, and Grecco filed this suit in September 2025; thus, the claim is within the three-year statute of limitations period. *See* 17 U.S.C § 507(b). The Court now turns to Block Club's fair use affirmative defense.

### *B. Fair Use*

"Under the Copyright Act, the exclusive rights afforded to copyright owners do not extend to 'fair uses' of copyrighted works." *Galvin*, 130 F. Supp. 3d at 1191 (citing 17 U.S.C. § 107). The goal of the fair use defense "is to facilitate a class of uses that would not be possible if users always had to negotiate with copyright proprietors." *Kienitz v. Sconnie Nation LLC*, 766 F.3d 756, 759 (7th Cir. 2014). The Copyright Act sets out four factors for a court to consider in determining whether a defendant's use is "fair." *Andy Warhol Found. for the Visual Arts, Inc. v. Goldsmith*, 598 U.S. 508, 527 (2023). These factors are: "(1) the purpose and character of the use, including whether such use is of a commercial nature or is for nonprofit educational purposes; (2) the nature of the copyrighted work; (3) the amount and substantiality of the portion used in relation to the copyrighted work as a whole; and (4) the effect of the use upon the potential market for or value of the copyrighted work." 17 U.S.C. § 107. These factors are non-exclusive. *Kienitz*, 766 F.3d at 758. The Court addresses each factor in turn.

#### *1. Market Effect*

Like Block Club, the Court starts with the fourth factor, which is usually the most important factor. *See Kienitz*, 766 F.3d at 758. As stated above, this factor considers "the effect of the use upon the potential market for or value of the copyrighted work." 17 U.S.C. § 107(4). The Supreme Court has explained that this factor asks whether the challenged use usurps the market for the original work or its derivative markets by serving as a substitute for the copyrighted work. *Harper & Row Publishers, Inc. v. Nation Enterprises*, 471 U.S. 539, 566–568 (1985). The

Seventh Circuit has held that this factor favors fair use when the challenged use neither diminishes demand for the original nor interferes with the copyright holder's existing or potential licensing market. *Kienitz*, 766 F.3d at 759.

Block Club argues that its use of the Photograph had no effect on the potential market or value of the Photograph because Grecco licensed the use of the Photograph, allowing for promotional uses of the Photograph. Memo. at 4–5 (citing License Agrmt.).[4] The Licensing Agreement, according to Block Club, allowed for "unlimited, worldwide use" of the Photograph in "news media reproduction and unpaid editorial insertion rights . . . for the promotion of the documentary." *Id.* at 4–5 (quoting License Agrmt.). From Block Club's perspective, the Licensing Agreement accounted for any possible adverse market effect, which means that no adverse market effect could be rendered. *Id.* at 5 (citing *Glovaroma, Inc. v. Maljack Prods., Inc.*, 71 F. Supp. 2d 846, 855 (N.D. Ill. 1999) (quoting *I.A.E., Inc. v. Shaver*, 74 F.3d 768, 775 (7th Cir. 1996) ("the existence of a license, exclusive or nonexclusive, creates an affirmative defense to a claim of copyright infringement.")).

Predictably, Grecco sees it differently. Grecco argues that it is selective about what photographs get licensed and to whom. Resp. at 7. Also, the purpose of its selectivity, asserts Grecco, is to preserve the value of the Photograph's market, so

[4]Block Club also argues that the Article received virtually no website traffic, meaning that there can be no possible adverse market effect. Memo. at 4. But the only support for that proposition is Exhibit D, the declaration of Block Club's co-founder and publisher, which, for the reasons stated above, the Court declines to consider at this stage, so the Court does not consider that argument. *See* Ans. Exh. D.

unauthorized use would deprive Grecco of control over its license and may result in lost licensing revenue. *Id.*

Viewing the pleadings in the light most favorable to Grecco, the pleadings establish that Block Club's use caused no cognizable market harm. Here, the Article published by Block Club promotes a screening of the documentary "I am Chris Farley" in Chicago and the debut of the documentary on cable TV, and therefore falls within the scope of Grecco's Licensing Agreement. Article; License Agrmt. It accordingly could not interfere with Grecco's existing licensing market, and Grecco does not argue that Block Club's use of the Photograph has diminished demand for the Photograph. *See Kienitz,* 766 F.3d at 759. As such, the fourth § 107 factor weighs in favor of fair use because Block Club's use of the Photograph was within the terms of Grecco's Licensing Agreement and did not diminish demand or interfere with Grecco's existing licensing market.

*2. Purpose and Character of the Use*

The Court next turns to the first fair use factor: "the purpose and character of the use, including whether such use is of a commercial nature or is for nonprofit educational purposes." 17 U.S.C.A. § 107(1). "The central question it asks is whether the use 'merely supersedes the objects of the original creation . . . (supplanting the original), or instead adds something new, with a further purpose or different character.'" *Andy Warhol Found. for the Visual Arts*, 598 U.S. at 509 (quoting *Campbell v. Acuff-Rose Music, Inc.*, 510 U.S. 569, 579 (1994)). However, "[a] copier need not transform the work for the copying to be fair use. *Chicago Corner, LLC v.*

*Hard Lens Media, Inc.*, 2026 WL 1786283, at *7 (N.D. Ill. June 22, 2026) (citing *Google LLC v. Oracle Am., Inc.*, 593 U.S. 1, 32 (2021)). Additionally, the courts should consider whether the "use is commercial as opposed to nonprofit . . . . The commercial nature of a use is relevant, but not dispositive. It is to be weighed against the degree to which the use has a further purpose or different character." *Id.* at 510. And, it bears repeating that "the first factor relates to the justification for the use." *Id.*

Block Club argues its use of the Photograph was not commercial in nature because it is an IRS-approved 501(c)(3) nonprofit organization. Memo. at 5; NFP Letter. Block Club asserts its purpose is "to operate an educational news site devoted to researching and disseminating essential reports, stories, and cultural information . . . to help Chicago citizens and the broader public be better informed and knowledgeable," not to increase its own profits. Memo. at 6 (quoting NFP Arts.). Grecco does not dispute that Block Club is a nonprofit organization recognized under IRS 501(c)(3). Resp. at 7–8. Rather, Grecco argues that Block Club's analysis is incomplete as it fails to address whether the work was transformative. *Id.* at 8. From Grecco's perspective, the Photograph was not transformative. *Id.* In reply, Block Club contends that "transformative" is not a factor under 17 U.S.C. § 107 and "the Seventh Circuit disfavors this factor." Reply at 6–7 (citing *Kienitz,* 766 F.3d 756). But even considering this factor, posits Block Club, its use of the Photograph was transformative "because it transformed Grecco's Photograph into a documentary cover." *Id.* at 6.

Although Block Club is correct that, in *Kientiz*, the Seventh Circuit rejected transformative use as an additional factor, 766 F.3d at 758, since then, as Grecco points out, the Supreme Court in *Andy Warhol Found. for the Visual Arts*, noted that "[a] use that has a further purpose or different character is said to be transformative," 598 U.S. at 510 (cleaned up). But, at bottom, that analysis is not about "transformation" but rather whether the "use at issue" differs from the "purpose and character" of the original. *Id.* "The larger the difference, the more likely the first factor weighs in favor of fair use. The smaller the difference, the less likely." *Id.* A work can be an exact replica of the original and still fall within fair use if there is a different "purpose and character." *See id.*; *Google*, 593 U.S. at 30.

Here, Block Club insists that its use was "transformative because it transformed Grecco's Photograph into a documentary cover." Reply at 7. This argument is too clever by half; at bottom, the photograph appearing in the Article is the same as the copyrighted Photograph. But that does not mean the *purpose* was the same: as Block Club argues, and as noted above, Grecco does not dispute, Block Club, as a nonprofit organization, had an "educational purpose" rather than a commercial purpose, unlike Grecco. Reply at 7 (citing NFP Arts.; Arts. Inc.; NFP Letter). The Court finds this different purpose, which, admittedly overlaps with the non-commercial nature of the use, weighs at least slightly in favor of fair use.

*3. The Nature of the Copyrighted Work*

The second factor, "nature of the copyrighted work," requires a court to analyze the "value of the material used." 17 U.S.C. § 107(2); *Galvin*, 130 F. Supp. 3d at 1194

(citing *Campbell*, 510 U.S. at 576). A court must consider whether the work "is more creative or factual in nature and whether it was published at the time of the allegedly infringing use." *Galvin*, 130 F. Supp. 3d at 1194 (citing *Harper & Row Publishers*, 471 U.S. at 563–64). This factor recognizes that some works, like creative works or fiction, are closer to the core of intended copyright protection than other works, like factual works or news broadcasts. *Campbell*, 510 U.S. at 586. As such, creative or fictional works are less likely to be used fairly than factual works. *Id.*

Block Club insists that the nature of its use is factual because the Photograph encompasses the objective of the Licensing Agreement, to promote the Chris Farley documentary, and the Photograph in and of itself is a picture of Chris Farley. Memo. at 7.[5] Grecco disagrees, contending that the Photograph is creative and Grecco contributed significant artistry. Resp. at 9–10 (citing *Monge v. Maya Magazines, Inc.*, 688 F.3d 1164 (9th Cir. 2012)).

At bottom, the Court is not fully persuaded by either party as to this factor. Contrary to Grecco's contention, even viewing the evidence in the light most favorable to Grecco, the evidence here does not establish that the Photograph is either purely creative or purely factual. While there is evidence that Grecco used skills and artistic judgment in creating the Photograph, making it a creative work, Grecco also authorized the Photograph's use as the cover of the "I am Chris Farley" documentary. License Agrmt. In that context, the Photograph can serve an informational purpose.

[5]In support of this factor, Block Club cites the publisher's declaration, Exhibit H. The Court, as stated above, will not consider that exhibit. However, based on the Article itself and the use of the Photograph within it, it is still clear that the Photograph is being used in furtherance of promoting the documentary. *See* Article.

Thus, although the Photograph contains creative expression, its authorized use as cover art demonstrates that it also communicated factual content. As such, the Court finds the "nature of the copyrighted work" factor neutral in its fair use analysis.[6]

*4. The Amount and Substantiality of the Portion Used*

The third factor considers whether "the amount and substantiality of the portion used in relation to the copyrighted work as a whole" are reasonable in relation to the challenged use's purpose. *Campbell*, 510 U.S. at 587 (citing 17 U.S.C. § 107(3)). In other words, "the extent of permissible copying varies with the purpose and character of the use." 510 U.S. at 586–87.

Block Club argues that this factor also weighs in favor of fair use. Block Club submits that while the whole Photograph appeared in the Article, the "wholesale copying [of the Photograph] does not preclude fair use." Memo. at 7 (quoting *FameFlynet, Inc. v. Jasmine Enterprises, Inc.*, 344 F. Supp. 3d 906, 913 (N.D. Ill. 2018)). The Article, notes Block Club, displayed the cover of the documentary, which was a licensed copy of the Photograph. *Id.* According to Block Club, Grecco licensed the entire Photograph for use as a documentary cover, and "it would have made little sense" for Block Club, or any media outlet, to use only a portion of the Photograph. *Id.* at 7–8. Grecco counters that this factor does not support fair use because Block

[6]Neither party, in arguing this factor, explicitly addresses the aspect as to "whether [the Photograph] was published at the time of the allegedly infringing use." *Galvin*, 130 F. Supp. 3d at 1194. Not only is there evidence in the record that the Photograph had been previously published, as Grecco alleged that Block Club "copied [the Photograph] from the internet," but also, as stated above, Grecco had licensed its Photograph to promote the documentary; it is clear that the Photograph was published at the time Block Club used it. Compl. ¶ 30; License Agrmt.

Club used substantial portions of the Photograph and Block Club's use was not transformative. Resp. at 10. The analysis for this factor is substantially similar to the first factor (purpose and character of the use). So, for the same reasons, the Court finds Block Club has the better of the argument.

Here, Block Club used the entire Photograph, but it was necessary in order to identify and discuss the Chris Farley documentary, which was the use for which the Photograph was licensed. *See Campbell*, 510 U.S. at 586–87 ("[W]e recognize that the extent of permissible copying varies with the purpose and character of the use."). Using anything less than the whole Photograph would have undermined Block Club's ability to accurately identify and discuss the documentary, therefore making wholesale use necessary to accomplish its informational purpose. Contrary to Grecco's argument, wholesale use of the Photograph was reasonable in relation to the purpose of displaying the Photograph. As such, the Court finds that this factor weighs in favor of fair use.

All told, the Court finds that three factors weigh in favor of fair use, including the fourth and most important factor (market effect), and one factor is neutral. As such, the Court concludes that the copying of the Photograph by Block Club, as alleged in the complaint, was a fair use of the copyrighted material consistent with 17 U.S.C. § 107. Since the pleadings leave no possible outcome but a finding of fair use, Grecco's copyright infringement claim must be dismissed.

## Conclusion

For the reasons above, the Court grants Block Club's motion for judgment on the pleadings. R. 20. The dismissal is with prejudice, as Grecco did not request leave to amend or suggest how Grecco could cure the defects in its complaint. *See Haywood v. Massage Envy Franchising, LLC*, 887 F.3d 329, 335 (7th Cir. 2018) ("Nothing in Rule 15, nor in any of our cases, suggests that a district court must give leave to amend a complaint where a party does not request it or suggest to the court the ways in which it might cure the defects. To the contrary, we have held that courts are within their discretion to dismiss with prejudice where a party does not make such a request or showing."); *see also L. Offs. of David Freydin, P.C. v. Chamara*, 24 F.4th 1122, 1133–34 (7th Cir. 2022) (affirming district court's denial of leave to amend where plaintiffs did not show how "they could amend their complaint to cure its deficiencies"); *Bell v. Bartholomew Consol. Sch. Corp.*, 2026 WL 828677, at *7 (S.D. Ind. Mar. 26, 2026) (dismissing claims, including copyright claim, with prejudice on a Rule 12(c) motion). Civil case terminated.

Dated: August 18, 2026

United States District Judge
Franklin U. Valderrama