# Exhibit 1

---

| | |
|---|---|
| **Subject:** | Michael Grecco Productions, Inc. v. Block Club Chicago NFP d/b/a DNAinfo.com |
| **Date:** | Friday, February 2, 2024 at 5:05:11 PM Central Standard Time |
| **From:** | Lauren Hausman |
| **To:** | Clyde Taylor |
| **CC:** | Fernando Baez |
| **Attachments:** | image001.jpg, image002.jpg |

Good evening Mr. Taylor,

I hope this email finds you well. I wanted to reach out to you regarding the above referenced matter. You previously worked with James to resolve a different matter with our firm, Minden Pictures v Block Club Chicago NFP. It appears that a different client of ours has discovered an infringement on dnainfo.com. I wanted to see if you would be representing them in this matter, or if the demand letter should be sent directly to Block Club. Please let me know, and I appreciate your assistance.

Thanks,

CopyCat LEGAL

**Lauren Hausman, Esq.**
Associate

Copycat Legal PLLC
3111 North University Drive, Suite 301
Coral Springs, Florida 33065

**T** 877-HERO-CAT (877-437-6228)
**E** lauren@copycatlegal.com
www.copycatlegal.com



# Exhibit 2

**Wednesday, November 18, 2026 at 10:56:17 AM Central Standard Time**

| | |
|---|---|
| **Subject:** | Re: Michael Grecco Productions, Inc. v. Block Club Chicago NFP d/b/a DNAinfo.com |
| **Date:** | Friday, September 27, 2024 at 11:38:59 AM Central Daylight Time |
| **From:** | Clyde Taylor |
| **To:** | Lauren Hausman |
| **CC:** | Ryan K Oberly, Fernando Baez, Matthew A Brown |
| **Attachments:** | image001.jpg, image002.jpg, image003.png |

Lauren,

The case you rely on in your May 20th email demonstrates that your client has no claim. According to that case, the "crux" of commercial v. non-commercial use is "whether the user stands to profit from exploitation of the copyrighted material without paying the customary price." This completely supports Block Club's position.

The "effect of the use upon the potential market" for a copyrighted work is the single most important element of fair use. *Harper & Row Publishers, Inc. v. Nation Enters.*, 471 U.S. 539, 565 (1985).

It is undisputed that Block Club is a non-profit organization solely engaged in nonprofit, educational activity. It is impossible that Block Club's alleged use in this instance had any effect whatsoever on the potential market for your client's work.

Your client has no basis for recovery, and we consider this matter closed.

Sincerely,

**CLYDE TAYLOR** | Attorney at Law
Wagenmaker & Oberly, LLC | *Trusted Advisors to Nonprofits*
312.626.1600

**CONFIDENTIALITY NOTICE:** This email and any attachments are confidential and may constitute PRIVILEGED ATTORNEY/CLIENT information. If you believe that it has been sent to you in error, please reply to the sender that you received the message in error. Then delete it. Thank You.

**From:** Lauren Hausman <lauren@copycatlegal.com>
**Date:** Wednesday, September 25, 2024 at 8:50 AM
**To:** Clyde Taylor <clyde@wagenmakerlaw.com>
**Cc:** Ryan K Oberly <ryan@wagenmakerlaw.com>, Fernando Baez <fernando@copycatlegal.com>, Matthew A Brown <matthew@wagenmakerlaw.com>
**Subject:** RE: Michael Grecco Productions, Inc. v. Block Club Chicago NFP d/b/a DNAinfo.com

Hi Clyde,

Hope all is well. Just checking in on this.

Thanks,
Lauren

CopyCat LEGAL

Lauren Hausman, Esq.
Attorney

CopyCat Legal PLLC
3111 North University Drive,
Suite 301
Coral Springs, Florida 33065

T 877-HERO-CAT (877-437-6228)
E lauren@copycatlegal.com

www.copycatlegal.com




---

**From:** Lauren Hausman
**Sent:** Thursday, September 5, 2024 9:37 PM
**To:** 'Clyde Taylor' <clyde@wagenmakerlaw.com>
**Cc:** 'Ryan K Oberly' <ryan@wagenmakerlaw.com>; Fernando Baez <fernando@copycatlegal.com>; 'Matthew A Brown' <matthew@wagenmakerlaw.com>
**Subject:** RE: Michael Grecco Productions, Inc. v. Block Club Chicago NFP d/b/a DNAinfo.com

Hi Clyde,

I hope you are well. I wanted to circle back to my below email. While I certainly could have missed it, I do not believe I ever saw a response come in. I look forward to hearing from you.

Best,
Lauren

CopyCat LEGAL

Lauren Hausman, Esq.
Attorney

CopyCat Legal PLLC
3111 North University Drive,
Suite 301
Coral Springs, Florida 33065

T 877-HERO-CAT (877-437-6228)
E lauren@copycatlegal.com

www.copycatlegal.com




---

**From:** Lauren Hausman

**Sent:** Monday, May 20, 2024 8:48 AM
**To:** Clyde Taylor <clyde@wagenmakerlaw.com>
**Cc:** Ryan K Oberly <ryan@wagenmakerlaw.com>; Fernando Baez <fernando@copycatlegal.com>; Matthew A Brown <matthew@wagenmakerlaw.com>
**Subject:** RE: Michael Grecco Productions, Inc. v. Block Club Chicago NFP d/b/a DNAinfo.com

Hi Clyde,

I hope you are well. Please accept my apologies for the delay in response.

While I understand the position your client is taking that its use would be protected as fair use, I cannot say I agree. There is a difference between commentary or criticism *of the* work, as compared to commentary or criticism *on a topic* and using the work to bolster an article. To be clear, I am not saying that a court could not interpret fair use as you are applying it to this situation. My point is that we are going to disagree, and it is really anyone's guess how a court would find. See Pickersgill v. Egotist, LLC, Civil Action No. 22-cv-01037-CMA-NRN, 2022 U.S. Dist. LEXIS 166051, at *14-15 (D. Colo. Sep. 14, 2022) ("In addition, the 'crux' of the distinction between commercial and noncommercial use is whether the user stands to profit from exploitation of the copyrighted material without paying the customary price.  Legitimate news outlets often license photos and videos to illustrate and add visual interest to their articles. It is alleged that the Egotist reproduced a substantial portion of Mr. Pickersgill's work, without paying any licensing fee, to generate income for itself and without adding anything new or meaningful to the consideration of the images. None of this justifies a finding of fair use.") (internal citations and quotations omitted).

That said, my client remains open to amicable resolution of this matter. Please let me know if you have any questions, as well as how your client would like to proceed. I look forward to hearing from you.

Sincerely
Lauren

CopyCat LEGAL

**Lauren Hausman, Esq.**
Attorney

CopyCat Legal PLLC
3111 North University Drive,
Suite 301
Coral Springs, Florida 33065

**T** 877-HERO-CAT (877-437-6228)
**E** lauren@copycatlegal.com

www.copycatlegal.com




---

**From:** Clyde Taylor <clyde@wagenmakerlaw.com>

**Sent:** Thursday, March 14, 2024 9:46 AM
**To:** Lauren Hausman <lauren@copycatlegal.com>
**Cc:** Ryan K Oberly <ryan@wagenmakerlaw.com>; Fernando Baez <fernando@copycatlegal.com>; Matthew A Brown <matthew@wagenmakerlaw.com>
**Subject:** Re: Michael Grecco Productions, Inc. v. Block Club Chicago NFP d/b/a DNAinfo.com

Attorney Hausman,

Please see the attached response to your letter dated February 16, 2024.

Sincerely,

—

**CLYDE TAYLOR** | Attorney at Law
Wagenmaker & Oberly, LLC | *Trusted Advisors to Nonprofits*
312.626.1600

**CONFIDENTIALITY NOTICE:** This email and any attachments are confidential and may constitute PRIVILEGED ATTORNEY/CLIENT information. If you believe that it has been sent to you in error, please reply to the sender that you received the message in error. Then delete it. Thank You.

---

**From:** Clyde Taylor <clyde@wagenmakerlaw.com>
**Date:** Wednesday, March 6, 2024 at 3:43 PM
**To:** Fernando Baez <fernando@copycatlegal.com>
**Cc:** Ryan K Oberly <ryan@wagenmakerlaw.com>, Lauren Hausman <lauren@copycatlegal.com>
**Subject:** Re: Michael Grecco Productions, Inc. v. Block Club Chicago NFP d/b/a DNAinfo.com

Mr. Baez and Ms. Hausman,

I am reviewing your letter and will discuss it with my client. I will plan to respond to your letter by next Wednesday, March 13th.

Sincerely,

—

**CLYDE TAYLOR** | Attorney at Law
Wagenmaker & Oberly, LLC | *Trusted Advisors to Nonprofits*
312.626.1600

**CONFIDENTIALITY NOTICE:** This email and any attachments are confidential and may constitute PRIVILEGED ATTORNEY/CLIENT information. If you believe that it has been sent to you in error, please reply to the sender that you received the message in error. Then delete it. Thank You.

---

**From:** Fernando Baez <fernando@copycatlegal.com>
**Date:** Friday, February 16, 2024 at 2:40 PM
**To:** Clyde Taylor <clyde@wagenmakerlaw.com>
**Cc:** Ryan K Oberly <ryan@wagenmakerlaw.com>, Lauren Hausman

<lauren@copycatlegal.com>
**Subject:** RE: Michael Grecco Productions, Inc. v. Block Club Chicago NFP d/b/a DNAinfo.com

**FRE 408 SETTLEMENT COMMUNICATION**

Mr. Taylor,

Please see the attached letter, dated today, regarding this matter.

Thank you,

CopyCat LEGAL

Fernando Baez
Legal Research Specialist

Copycat Legal PLLC
3111 North University Drive,
Suite 301
Coral Springs, Florida 33065

T 877-HERO-CAT (877-437-6228)
E fernando@copycatlegal.com
www.copycatlegal.com




Research Specialists are non-attorney staff members who assist attorneys in attempting to resolve copyright claims prior to litigation.

---

**From:** Clyde Taylor <clyde@wagenmakerlaw.com>
**Sent:** Tuesday, February 6, 2024 5:16 PM
**To:** Lauren Hausman <lauren@copycatlegal.com>
**Cc:** Fernando Baez <fernando@copycatlegal.com>; Ryan K Oberly <ryan@wagenmakerlaw.com>
**Subject:** Re: Michael Grecco Productions, Inc. v. Block Club Chicago NFP d/b/a DNAinfo.com

Attorney Hausman,

Please address the letter to Block Club and send it to our law firm. You can email it to me at this email address.

Sincerely,

**CLYDE TAYLOR** | Attorney at Law
Wagenmaker & Oberly, LLC | *Trusted Advisors to Nonprofits*
312.626.1600

**CONFIDENTIALITY NOTICE:** This email and any attachments are confidential and may constitute PRIVILEGED ATTORNEY/CLIENT information. If you believe that it has been sent to you in error, please reply to the sender that you received the message in error. Then delete it. Thank You.

**From:** Lauren Hausman <lauren@copycatlegal.com>
**Date:** Friday, February 2, 2024 at 5:05 PM
**To:** Clyde Taylor <clyde@wagenmakerlaw.com>
**Cc:** Fernando Baez <fernando@copycatlegal.com>
**Subject:** Michael Grecco Productions, Inc. v. Block Club Chicago NFP d/b/a DNAinfo.com

Good evening Mr. Taylor,

I hope this email finds you well. I wanted to reach out to you regarding the above referenced matter. You previously worked with James to resolve a different matter with our firm, Minden Pictures v Block Club Chicago NFP. It appears that a different client of ours has discovered an infringement on dnainfo.com. I wanted to see if you would be representing them in this matter, or if the demand letter should be sent directly to Block Club. Please let me know, and I appreciate your assistance.

Thanks,

CopyCat LEGAL




**Lauren Hausman, Esq.**
Associate

Copycat Legal PLLC
3111 North University Drive, Suite 301
Coral Springs, Florida 33065

**T** 877-HERO-CAT (877-437-6228)
**E** lauren@copycatlegal.com
www.copycatlegal.com

# Exhibit 3

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF ILLINOIS

MICHAEL GRECCO
PRODUCTIONS, INC.,

Plaintiff, Case No. 1:25-cv-11155

v.

BLOCK CLUB
CHICAGO NFP d/b/a Hon. Franklin U. Valderrama
DNAINFO.COM,

Defendant.

---

**JOINT STATEMENT PURSUANT TO LOCAL RULE 54.3(e)**

Pursuant to Local Rule 54.3(e), Defendant Block Club Chicago NFP ("Block Club") and Plaintiff Michael Grecco Productions, Inc. ("Grecco") submit the following Joint Statement concerning Block Club's anticipated motion for attorneys' fees under 17 U.S.C. § 505.

**1. Block Club's Fee Request**

Block Club seeks an award of $33,954.00 in attorneys' fees for 85.0 hours of attorney and paralegal time. Block Club's present request consists of attorneys' fees only and does not include separate related nontaxable expenses. Block Club's request is calculated as follows:

| Timekeeper | Claimed Hours | Claimed Rate(s) | Claimed Fees |
|---|---|---|---|
| Clyde Taylor | 39.2 | $400 / $430 / $475 | $17,832.50 |
| Alyse Alban | 24.9 | $370 / $400 | $9,702.00 |
| Annie Wiese | 10.0 | $325 | $3,250.00 |
| Matthew Brown | 4.6 | $350 / $375 | $1,657.50 |
| Rebecca Alexander (paralegal) | 6.3 | $240 | $1,512.00 |

| **Total** | **85.0** | **$33,954.00** |
|---|---|---|

The hourly rates listed above varied by year during the period covered by Block Club's fee request. The amount sought consists of $1,785.00 for 4.8 hours of compensable pre-suit work; $27,487.00 for 66.4 hours of district-court litigation through judgment; and $4,682.00 for 13.8 hours incurred in connection with Block Club's fee request.

Block Club does not seek compensation for 4.1 hours designated as no charge, 1.3 hours of mixed pre-suit work, 2.8 hours devoted solely to the appeal, or 1.6 hours of mixed appellate and fee-petition work that could not reliably be allocated. Those additional exclusions total 5.7 charged hours and $2,193.00. Block Club reserves the right to seek reasonable additional fees incurred in connection with briefing and resolution of its fee motion.

Block Club notes that Grecco has submitted an abbreviated brief in its section pertaining to its position on the attorneys' fees, which is not proper for a Joint Statement. (See Section 2 below.) Block Club preserves all arguments it may have in response to Grecco's arguments below for the appropriate venue.

**2. Grecco's Position**

On October 15, 2026, pursuant to Local Rule 54.3(d), Block Club emailed Grecco's counsel a letter and supporting billing records setting forth the attorneys' fees Block Club intends to seek under 17 U.S.C. § 505. As a preliminary matter, Grecco contends that Block Club failed to comply with Local Rule 54.3, that such failure greatly prejudices Grecco's ability to evaluate Block Club's purported billing records, and that attorneys' fee issues should be stayed pending resolution of Grecco's appeal of the dismissal of his Complaint. As the Court knows, Local Rule 54.3(d)(4) requires Block Club to furnish fee information to Grecco "within 21 days of the judgment." Judgment in favor of Block Club was entered on August 18, 2026, meaning the information specified in the Local Rule was to be provided to undersigned counsel by no later than September 8, 2026. Local Rule 54.1(d)(5)

then provides Grecco 21 additional days to disclose information about fees paid by Grecco and an additional 14 days for the parties to discuss the fees being sought and identify any disagreements thereto. Here, rather than the time period specified by the Local Rules, Block Club provided Grecco a total of 12 days to review heavily-redacted time records which themselves don't even comply with Local Rule 54.3(d)(2) (i.e., providing evidence of the reasonableness of the rate such as being paid an equivalent rate in similar matters). Given that Grecco has appealed the Court's ruling dismissing its action on fair use grounds, the Court should either stay the attorneys' fee issue pending the outcome of that appeal or deny relief to Block Club altogether given that it first provided any semblance of fee information to Grecco more than a month after the due date under the Local Rules.

Because Grecco has been provided inadequate time to review Block Club's billing records, Grecco objects to any requirement that it must specify in detail any disputes thereto. That said, Grecco does object to the bulk of the fees sought to be recovered by Block Club. First, Block Club seeks "4.8 hours of compensable pre-suit work" but does not identify how/why such pre-suit work is recoverable. <u>See, e.g.</u> <u>J & J Sports Prods. v. Barajas</u>, No. 1:15-cv-01354-DAD-JTL, 2016 U.S. Dist. LEXIS 66332, at *8 (E.D. Cal. May 18, 2016) ("[M]any courts have refused to award such pre-filing investigative fees to the prevailing party.") (collecting cases). Second, Block Club fails to provide any support for the reasonableness of the rates of the various timekeepers who billed on this lawsuit (i.e., background, number of years practicing, commensurate work where similar fees were charged, etc.). Second, Block Club's billing records are difficult to analyze given the practice of 'block billing' (i.e., combining multiple billing entries into a single line item). For example, many of the billing entries combine 4 – 5 different tasks into a single multi-hour line item, making it impossible to evaluate the reasonableness of any particular fee entry. Third, the redactions made by Block Club render any such analysis impossible. Indeed, Clyde Taylor's December 17, 2025 time entry is for 2.0 hours and is entirely redacted (not a single word is revealed), Alyse Alban's December 23, 2025 time entry is for

.4 hours and is entirely redacted, Clyde Taylor's January 29, 2026 time entry is for .2 hours and is entirely redacted, Clyde Taylor's February 26, 2026 time entry is for .2 hours and is entirely redacted, etc. Further, the bulk of partially redacted entries likewise reveal only 1 item while obscuring what appears to be 3 – 4 other entries. Fourth, approximately ½ of the 80.2 in-lawsuit hours being sought by Block Club are for drafting the motion to dismiss/reply thereto. The motion is a total of 9 pages as is the reply memorandum and, while Block Club was certainly successful with respect to such, billing nearly 40 hours to drafting and researching the motion is excessive. This is especially so given that Block Club's counsel apparently utilized this case to learn copyright law on the go (as evidenced by the fact that counsel apparently did not know the Copyright Act had a fee provision until after judgment was entered).

Grecco contests that ***any*** fees should be awarded to Block Club (the Court should exercise its discretion to deny fees altogether). However, if the Court ultimately does award fees, the amount awarded should be reduced as follows: the entirety of pre-suit fees (4.8 hours or $1,785.00) should be disallowed; fees through judgment (66.4 hours or $27,487.00) should be reduced by at least 75% given the excessive billing and other issues pointed out above; and the post-judgment work (13.8 hours or $4,682.00) should be disallowed. Thus, at most, the Court should award $6,871.75 if it finds fee entitlement or does not otherwise stay briefing on the fee issue.

**3. Remaining Disputes**

All of Block Club's attorneys' fees as outlined above remain disputed by Grecco.

**4. Basis for Fee Motion and Appeal**

Block Club's anticipated motion for attorneys' fees is based on the Court's August 18, 2026, judgment in its favor. Grecco appealed that judgment to the United States Court of Appeals for the Seventh Circuit on September 18, 2026. The appeal is pending as *Michael Grecco Productions, Inc. v. Block Club Chicago NFP*, No. 26-2924 (7th Cir.). Seeking fees through a fee petition at this time is

proper regardless of the pending appeal. *See Wine & Canvas Dev., LLC v. Muylle,* 868 F.3d 534, 542 (7th Cir. 2017) (stating that the Seventh Circuit has "unequivocally held" that motions for attorney fees are an exception to the general rule that a notice of appeal divests the district court of jurisdiction).

By:________________________________
Attorney for Defendant
Clyde Taylor

Wagenmaker & Oberly, LLC
Clyde Taylor, ARDC # 6333452
Alyse Alban, ARDC # 6326895
53 W. Jackson Blvd., Ste 1734
Chicago, IL 60604
Phone 312-626-1600
clyde@wagenmakerlaw.com
alyse@wagenmakerlaw.com

By:__/s/ Daniel DeSouza__________
Attorney for Plaintiff
Daniel DeSouza

CopyCat Legal PLLC
Daniel DeSouza, Esq.
3111 N. University Drive
Suite 301
Coral Springs, FL 33065
Phone: 954-900-9014
dan@copycatlegal.com

# Exhibit 4

**Wednesday, November 18, 2026 at 11:13:31 AM Central Standard Time**

| | |
|---|---|
| **Subject:** | Re: Grecco v. Block Club, 1:25-cv-11155 - Motion for Judgment on Pleadings / Discovery |
| **Date:** | Thursday, February 12, 2026 at 1:39:08 PM Central Standard Time |
| **From:** | Clyde Taylor |
| **To:** | Lauren Hausman |
| **CC:** | Tia Kelly, Daniel DeSouza, Alyse Alban |
| **BCC:** | Rebecca Alexander |
| **Attachments:** | Motion to Stay.docx |

Hello Lauren,

I am following up on my email below.

I went ahead and prepared a proposed joint motion to stay and accompanying order, attached above.

I would appreciate your feedback on the proposed joint motion.

If I don't hear from you by 1 pm CT tomorrow, Friday, February 13, I will go ahead and file a motion to stay on behalf of Defendant (not a joint motion) and note that we contacted the Plaintiff regarding the motion but did not hear back, as of the time of filing.

Given that next Monday is a federal holiday and our current schedule requires discovery responses by February 27, I would like to get the motion on file this week so the magistrate judge can evaluate it and rule well before the February 27 deadline.

I look forward to your feedback.

Sincerely,

**CLYDE TAYLOR** | Attorney at Law
Wagenmaker & Oberly, LLC | *Trusted Advisors to Nonprofits*
312.626.1600

**CONFIDENTIALITY NOTICE:** This email and any attachments are confidential and may constitute PRIVILEGED ATTORNEY/CLIENT information. If you believe that it has been sent to you in error, please reply to the sender that you received the message in error. Then delete it. Thank You.

**From:** Clyde Taylor <clyde@wagenmakerlaw.com>
**Date:** Monday, February 9, 2026 at 5:07 PM
**To:** Lauren Hausman <lauren@copycatlegal.com>
**Cc:** Tia Kelly <tia@copycatlegal.com>, Daniel DeSouza <dan@copycatlegal.com>, Alyse Alban <Alyse@wagenmakerlaw.com>
**Subject:** Grecco v. Block Club, 1:25-cv-11155 - Motion for Judgment on Pleadings / Discovery

Hello Lauren,

Block Club has filed a motion for judgment on the pleadings in the above-referenced case, and the court has now set a briefing schedule.

Responses to discovery requests that we both served on January 30 are due February 27.

I wanted to ask if you would consider a motion to stay discovery, pending resolution of the pending motion for judgment on the pleadings.

We have no intention of delaying our responses to your discovery requests unnecessarily and will not do so. However, given the time and expense of preparing and delivering responses, we would like to avoid the time and legal fees associated with responding to discovery if there is a possibility the case will be dismissed without discovery.

With this in mind, would you consider a joint motion and proposed order to stay discovery while Block Club's motion for judgment on the pleadings is pending and require discovery responses to be served within 21 days of the Court issuing a ruling on the motion (assuming it is denied)? We could also simply request that the current discovery schedule be suspended and then reset if Block Club's motion is denied.

I believe the magistrate judge would need to consider and approve such a motion and order, but hopefully he would.

Thank you for your consideration, and I look forward to your feedback.

Sincerely,

**CLYDE TAYLOR** | Attorney at Law
Wagenmaker & Oberly, LLC | *Trusted Advisors to Nonprofits*
312.626.1600

**CONFIDENTIALITY NOTICE:** This email and any attachments are confidential and may constitute PRIVILEGED ATTORNEY/CLIENT information. If you believe that it has been sent to you in error, please reply to the sender that you received the message in error. Then delete it. Thank You.

# Exhibit 5

# UNITED STATES COURT OF APPEALS FOR THE SEVENTH CIRCUIT

Everett McKinley Dirksen
United States Courthouse
Room 2722 - 219 S. Dearborn Street
Chicago, Illinois 60604

Office of the Clerk
Phone: (312) 435-5850
www.ca7.uscourts.gov

## RULE TO SHOW CAUSE
## CIRCUIT RULE 3(c) DOCKETING STATEMENT

October 7, 2026

*By the Court*:

| | |
|---|---|
| No. 26-2924 | MICHAEL GRECCO PRODUCTIONS, INC.,<br>Plaintiff - Appellant<br><br>v.<br><br>BLOCK CLUB CHICAGO, doing business as DNAINFO.COM,<br>Defendant - Appellee |
| **Originating Case Information:** | |
| District Court No: 1:25-cv-11155<br>Northern District of Illinois, Eastern Division<br>District Judge Franklin U. Valderrama | |

Circuit Rule 3(c) directs the appellant to file and serve a Docketing Statement, which meets the requirements of Circuit Rule 28(a), with the clerk of the District Court at the time of the filing of the notice of appeal or with the clerk of this court within seven (7) days of filing the notice of appeal. The Rule 3(c) Docketing Statement has not been filed to date. Accordingly,

**IT IS ORDERED** that the appellant file this overdue Docketing Statement with the clerk of this court within fourteen (14) days of the date of this order. Failure to do so will result in a one hundred dollar ($100.00) fine and/or dismissal of this notice of appeal.

**NOTE:** Please caption document "CIRCUIT RULE 3(c) DOCKETING STATEMENT". The filing of a "Jurisdictional Memorandum" which may have been specifically ordered by the court does not satisfy your obligation under Circuit Rule 3(c). The filing of a "CIRCUIT RULE 3(c) DOCKETING STATEMENT" shall constitute a response to this order.

form name: **c7_Docket_Showcause** (form ID: **115**)

# Exhibit 6

WAGENMAKER & OBERLY

October 15, 2026

Daniel DeSouza
Lauren Hausman
CopyCat Legal PLLC

3111 North University Drive
Suite 301
Coral Springs, FL 33065

*Sent via Email*
dan@copycatlegal.com
lauren@copycatlegal.com

Re: *Michael Grecco Productions, Inc. v. Block Club Chicago NFP*, No. 1:25-cv-11155

Dear Attorneys DeSouza and Hausman:

We write on behalf of our client, Block Club Chicago NFP ("Block Club"), requesting attorneys' fees following entry of judgment in its favor on August 18, 2026. Section 505 of the Copyright Act provides that a court, in its discretion, may award a reasonable attorney's fee to the prevailing party as part of the costs. 17 U.S.C. § 505. Block Club intends to seek recovery of its reasonable attorneys' fees under that provision following the Court's entry of judgment on the pleadings and dismissal with prejudice of Grecco's copyright claim.

Pursuant to Northern District of Illinois Local Rule 54.3, Block Club has until November 17, 2026 to file its fee petition for the above captioned matter. Prior to filing this fee petition, the Local Rules first require Block Club to provide Grecco with the time and work records on which the motion will be based, and to specify the hours for which compensation will and will not be sought. The Local Rules further require the parties to identify specifically the hours, rates, and amounts that are and are not disputed and to prepare a joint statement addressing any disputes that remain. The joint statement is due October 27, 2026.

Wagenmaker & Oberly's applicable hourly rates are as follows:

| Timekeeper | 2024 Rate | 2025 Rate | 2026 Rate |
|---|---|---|---|
| Clyde Taylor | $400 | $430 | $475 |
| Alyse Alban | — | $370 | $400 |
| Annie Wiese | — | — | $325 |
| Matthew Brown | $350 | $375 | — |
| Rebecca Alexander | — | $240 | $240 |

These are the rates reflected in W&O's contemporaneous billing records for this matter and agreed to by Block Club.

Attached is an Exhibit containing our firm's billing records reflecting time entries, with appropriate redactions to protect attorney-client privileged communications and work product. Block Club currently seeks $33,954.00 for 85.0 hours of attorney and paralegal time incurred in connection with the copyright dispute, the district-court litigation, and preparation of its fee request. Specifically, the amount sought consists of $1,785.00 for 4.8 hours of compensable pre-suit work; $27,487.00 for 66.4 hours of district-court litigation; and $4,682.00 for 13.8 hours incurred in preparing the fee request. Block Club also reserves the right to seek reasonable additional fees incurred in connection with briefing and resolution of its fee request. The enclosed billing records identify the date, timekeeper, work performed, hours, and applicable rate for the time for which reimbursement is sought.

Block Club does not seek compensation for 4.1 hours designated as no charge, 1.3 hours of mixed pre-suit work, 2.8 hours devoted solely to the appeal, or 1.6 hours of mixed appellate and fee-petition work that could not reliably be allocated. Those additional exclusions total 5.7 charged hours and $2,193.00.

Please advise as soon as possible which portions of Block Club's fee request Grecco agrees should be awarded and which specific hours, rates, or amounts Grecco disputes, together with the basis for each objection and the amount Grecco contends should be awarded. Based on your response, we will prepare the joint statement for completion by October 27, 2026.

Sincerely,

Alyse Alban

# EXHIBIT B

## Billing Records Supporting Defendant Block Club Chicago NFP's Motion for Attorneys' Fees

*Only time for which Block Club seeks reimbursement is included below.*

### Summary of Fees Sought

| Phase | Hours | Fees |
|---|---|---|
| Pre-Suit Copyright Dispute | 4.8 | $1,785.00 |
| District-Court Litigation Through Judgment | 66.4 | $27,487.00 |
| Fee Petition | 13.8 | $4,682.00 |
| **TOTAL** | **85.0** | **$33,954.00** |

### Detailed Time Entries

| Date | Timekeeper | Description | Hours | Rate | Amount |
|---|---|---|---|---|---|
| **Pre-Suit Copyright Dispute** | | | | | |
| 02/25/2024 | Clyde Taylor | Review and evaluate letter alleging copyright infringement by virtue of photograph of Chris Farley on DNAinfo webpage. | 0.2 | $400 | $80.00 |
| 03/06/2024 | Clyde Taylor | Review and analyze letter from CopyCat Legal regarding alleged infringement of Greco copyright. | 0.2 | $400 | $80.00 |
| 03/12/2024 | Matthew Brown | Develop response to demand letter regarding photograph by Michael Grecco; analyze demand letter; research case law regarding fair use for movie posters. | 2.5 | $350 | $875.00 |
| 03/12/2024 | Clyde Taylor | Further develop letter in response to alleged copyright violation of M. Greco copyright for Chris Farley photograph. | 0.7 | $400 | $280.00 |
| 03/13/2024 | Clyde Taylor | Further develop and finalize letter regarding Greco copyright violation allegation; prepare and send email to S. Toomey providing draft letter for review. | 0.2 | $400 | $80.00 |
| 05/20/2024 | Clyde Taylor | Review and evaluate response from CopyCat Legal regarding alleged copyright infringement on behalf of M. Greco. | 0.2 | $400 | $80.00 |
| 05/31/2024 | Clyde Taylor | Prepare and send email to S. Toomey regarding alleged infringement of M. Greco photograph and provide recommendation regarding same. | 0.2 | $400 | $80.00 |
| 09/13/2024 | Clyde Taylor | Review email from Attorney L. Hausman regarding Greco copyright dispute; prepare and end email to S. Toomey with proposed response. | 0.2 | $400 | $80.00 |
| 09/19/2024 | Matthew Brown | Analyze draft correspondence regarding alleged copyright infringement of picture featuring C. Farley; provide recommendations to attorney C. Taylor regarding same. | 0.2 | $350 | $70.00 |
| 09/27/2024 | Clyde Taylor | [redacted] finalize and send email to Attorney L. Hausman regarding Grecco copyright infringement claim. | 0.2 | $400 | $80.00 |
| **Pre-Suit Copyright Dispute Subtotal** | | | **4.8** | | **$1,785.00** |
| **District-Court Litigation Through Judgment** | | | | | |
| 09/19/2025 | Matthew Brown | Develop assessment of copyright infringement litigation; evaluate complaint and related documents regarding same; review docket and download case documents to client file. | 1.3 | $375 | $487.50 |
| 09/22/2025 | Clyde Taylor | Review and respond to email from S. Toomey regarding pending lawsuit and taking down Chris Farley images; review prior letter to Copy Cat Legal regarding same. | 0.2 | $430 | $86.00 |
| 10/01/2025 | Matthew Brown | Develop email to S. Toomey regarding copyright infringement complaint and related next steps. | 0.6 | $375 | $225.00 |
| 10/02/2025 | Clyde Taylor | Review complaint for M. Greco lawsuit; identify and analyze applicable case law regarding discovery rule in Illinois related to copyright infringement; prepare and send email to S. Toomey analyzing claims in lawsuit and providing recommendations for next steps. | 2.2 | $430 | $946.00 |
| 10/16/2025 | Clyde Taylor | Prepare and send email to S. Toomey regarding status of service of complaint; review response. | 0.1 | $430 | $43.00 |

| Date | Timekeeper | Description | Hours | Rate | Amount |
|---|---|---|---|---|---|
| 10/29/2025 | Clyde Taylor | Check court docket for filings and pending deadlines. | 0.1 | $430 | $43.00 |
| 12/02/2025 | Clyde Taylor | Review and send brief response to email from S. Toomey regarding service in Greco v. Block Club matter. | 0.2 | $430 | $86.00 |
| 12/03/2025 | Rebecca Alexander | Paralegal: Update client file and calendar in connection with service of Complaint and respective due dates. | 0.1 | $240 | $24.00 |
| 12/03/2025 | Clyde Taylor | Review Greco v. Block Club complaint and related legal issues; [redacted] | 0.5 | $430 | $215.00 |
| 12/09/2025 | Alyse Alban | Read complaint and research possible statute of limitations defense. | 1.5 | $370 | $555.00 |
| 12/10/2025 | Clyde Taylor | Review email from S. Toomey providing proof of service and Complaint; respond to same and provide update on legal research related to possible motion to dismiss. | 0.2 | $430 | $86.00 |
| 12/11/2025 | Alyse Alban | [redacted] | 2.1 | $370 | $777.00 |
| 12/12/2025 | Clyde Taylor | [redacted] | 0.4 | $430 | $172.00 |
| 12/16/2025 | Clyde Taylor | Further review research related to possible motion to dismiss; [redacted] | 1.4 | $430 | $602.00 |
| 12/16/2025 | Alyse Alban | Analyze research findings and strategize next steps for proceeding with litigation. | 0.2 | $370 | $74.00 |
| 12/17/2025 | Rebecca Alexander | Paralegal: Update client file and calendar in connection with the January 6th Initial Joint Status Report due date. | 0.1 | $240 | $24.00 |
| 12/17/2025 | Clyde Taylor | [redacted] | 2.0 | $430 | $860.00 |
| 12/18/2025 | Clyde Taylor | Strategize regarding development of Answer and Motion to Dismiss; [redacted] | 1.1 | $430 | $473.00 |
| 12/18/2025 | Alyse Alban | Analyze strategy for proceeding with litigation, begin drafting answer to complaint, declaration, and draft email to the client for additional information needed for the same for review by attorney C. Taylor. | 3.3 | $370 | $1,221.00 |

| Date | Timekeeper | Description | Hours | Rate | Amount |
|---|---|---|---|---|---|
| 12/18/2025 | Rebecca Alexander | Paralegal: Conduct search on PACER online case search for Michael Grecco Productions, Inc.; Begin preparation of answer to complaint. | 0.2 | $240 | $48.00 |
| 12/20/2025 | Alyse Alban | Further develop answer to complaint. | 0.8 | $370 | $296.00 |
| 12/21/2025 | Alyse Alban | Finalize answer and declaration and send to attorney C. Taylor for review. | 0.3 | $370 | $111.00 |
| 12/22/2025 | Rebecca Alexander | Paralegal: Evaluate local rules related to appearance filing and corporate disclosure filing requirements; Confer with attorney Taylor regarding the same and update file accordingly. | 0.2 | $240 | $48.00 |
| 12/22/2025 | Clyde Taylor | Further develop Answer and declaration; [redacted] | 2.5 | $430 | $1,075.00 |
| 12/23/2025 | Rebecca Alexander | Paralegal: Prepare attorney appearance, notification of affiliates, declaration and exhibit binder for the Grecco matter. | 1.5 | $240 | $360.00 |
| 12/23/2025 | Clyde Taylor | Further develop, finalize, and coordinate filing of Answer, notification of affiliates, and appearance; perform edits to declaration of S. Toomey; coordinate signature of same; perform edits to declaration of R. Alexander; review and finalize exhibits. | 2.5 | $430 | $1,075.00 |
| 12/23/2025 | Alyse Alban | [redacted] | 0.4 | $370 | $148.00 |
| 12/23/2025 | Rebecca Alexander | Paralegal: Send declaration to S. Toomey via Docusign; File Answer to complaint with supporting exhibits and attorney appearance via PACER eFiling system. | 0.8 | $240 | $192.00 |
| 12/30/2025 | Clyde Taylor | Prepare joint status report; prepare and send email to opposing counsel, D. DeSouza regarding same and preparation for filing report by 1/6/26. | 0.6 | $430 | $258.00 |
| 01/02/2026 | Clyde Taylor | Further develop proposed initial joint status report; research assigned judge and magistrate judge; prepare and send email to S. Toomey providing recommendations related to joint status report and to consent to magistrate judge. | 0.9 | $475 | $427.50 |
| 01/12/2026 | Clyde Taylor | Prepare and send email to S. Toomey regarding case status including filing of initial joint status report and Plaintiff's offer to enter into settlement discussions and recommendation regarding same. | 0.2 | $475 | $95.00 |
| 01/15/2026 | Clyde Taylor | Correspond with S. Toomey regarding potential settlement; prepare and send email to L. Hausman providing settlement offer. | 0.5 | $475 | $237.50 |
| 01/16/2026 | Clyde Taylor | Prepare and send email to L. Hausman, counsel for CopyCat Legal / M. Grecco, providing response to settlement offer. | 0.2 | $475 | $95.00 |
| 01/27/2026 | Alyse Alban | Begin drafting motion for judgment on the pleadings. | 1.8 | $400 | $720.00 |
| 01/29/2026 | Alyse Alban | Further draft motion for judgment on the pleadings. | 3.2 | $400 | $1,280.00 |
| 01/29/2026 | Clyde Taylor | [redacted] | 0.2 | $475 | $95.00 |
| 01/30/2026 | Clyde Taylor | Prepare and serve document requests and interrogatories on Plaintiff M. Grecco; receive discovery requests from M. Grecco and save to client file. | 1.0 | $475 | $475.00 |
| 02/01/2026 | Alyse Alban | Continue drafting motion for judgment on the pleadings and conduct additional research to substantiate arguments. | 1.1 | $400 | $440.00 |
| 02/02/2026 | Alyse Alban | Continue drafting motion for judgment on the pleadings. | 1.2 | $400 | $480.00 |
| 02/03/2026 | Alyse Alban | Finalize draft motion for judgment on the pleadings and send to attorney C. Taylor for review. | 0.9 | $400 | $360.00 |

| Date | Timekeeper | Description | Hours | Rate | Amount |
|---|---|---|---|---|---|
| 02/03/2026 | Clyde Taylor | Review draft motion for judgment on the pleading; perform initial edits. | 0.3 | $475 | $142.50 |
| 02/04/2026 | Rebecca Alexander | Paralegal: Prepare Motion to Dismiss draft; Evaluate local rules for filing. | 0.5 | $240 | $120.00 |
| 02/04/2026 | Clyde Taylor | Further develop memo in support of motion for judgment on the pleadings; [redacted]. | 4.0 | $475 | $1,900.00 |
| 02/05/2026 | Alyse Alban | Conduct final review of draft motion for judgment on the pleadings for filing. | 0.5 | $400 | $200.00 |
| 02/05/2026 | Rebecca Alexander | Paralegal: Finalize and file Motion, Memorandum and exhibit via PACER eFiling system. | 0.5 | $240 | $120.00 |
| 02/05/2026 | Clyde Taylor | Further develop motion to dismiss; [redacted] | 2.7 | $475 | $1,282.50 |
| 02/09/2026 | Clyde Taylor | Prepare and send email to Attorney L. Hausman, counsel for M. Grecco, requesting consent to stay discovery in light of pending motion for judgment on the pleadings; prepare and send email to S. Toomey regarding same and advising of briefing schedule on motion for judgment on the pleadings. | 0.4 | $475 | $190.00 |
| 02/12/2026 | Clyde Taylor | Prepare draft motion to stay discovery, pending outcome of motion for judgment on the pleadings; prepare and send email to L. Hausman, providing draft motion for review and feedback. | 0.6 | $475 | $285.00 |
| 02/13/2026 | Clyde Taylor | Further develop and finalize motion to stay discovery pending resolution of motion for judgment on the pleadings; coordinate filing of same. | 0.6 | $475 | $285.00 |
| 02/13/2026 | Rebecca Alexander | Paralegal: File Motion to Stay Discovery via PACER eFiling system; Update client file and calendar with hearing information for the same. | 0.6 | $240 | $144.00 |
| 02/19/2026 | Clyde Taylor | Prepare for and attend court hearing on motion to stay; phone call with Attorney D. DeSouza, counsel for Grecco Productions, related to motion to stay and possible settlement; prepare and send email to S. Toomey regarding court hearing outcome and recommending next steps regarding motion for judgment on the pleadings and settlement negotiations; review response to same. | 1.0 | $475 | $475.00 |
| 02/26/2026 | Clyde Taylor | [redacted] | 0.2 | $475 | $95.00 |
| 03/06/2026 | Alyse Alban | Review response brief and develop reply brief strategy; send proposed strategy to C. Taylor for review and further analysis. | 0.9 | $400 | $360.00 |
| 03/06/2026 | Clyde Taylor | Review response to motion for judgment on the pleadings, filed by Plaintiff Grecco; strategize regarding response to same; conduct initial review of cases cited in Grecco's response. | 0.4 | $475 | $190.00 |
| 03/10/2026 | Alyse Alban | Draft reply brief for motion for judgment on the pleadings and conduct research regarding the same. Send to C. Taylor for review and further development. | 4.6 | $400 | $1,840.00 |
| 03/11/2026 | Clyde Taylor | Further review response to motion for judgment on the pleadings filed by Plaintiff; develop reply brief in support of same. | 0.6 | $475 | $285.00 |

| Date | Timekeeper | Description | Hours | Rate | Amount |
|---|---|---|---|---|---|
| 03/12/2026 | Clyde Taylor | Further develop reply in support of motion for judgment on the pleadings; [redacted] | 4.2 | $475 | $1,995.00 |
| 03/12/2026 | Alyse Alban | Review and provide edits and general feedback on revised reply brief for filing. | 0.8 | $400 | $320.00 |
| 03/13/2026 | Clyde Taylor | Further develop, finalize, and coordinate filing of reply brief in support of motion for judgment on the pleadings; [redacted] | 3.2 | $475 | $1,520.00 |
| 03/13/2026 | Rebecca Alexander | Paralegal: Review reply brief in support of motion; Finalize and file the same via PACER eFiling system. | 0.5 | $240 | $120.00 |
| 08/18/2026 | Clyde Taylor | Review court ruling on motion for judgment on pleadings; prepare and send email to S. Toomey summarizing ruling and addressing next steps including obtaining costs. | 0.3 | $475 | $142.50 |
| 08/18/2026 | Alyse Alban | Review and analyze the court's order granting motion for judgment on the pleadings. | 0.4 | $400 | $160.00 |
| **District-Court Litigation Through Judgment Subtotal** | | | **66.4** | | **$27,487.00** |
| **Fee Petition** | | | | | |
| 08/21/2026 | Clyde Taylor | [redacted] | 0.4 | $475 | $190.00 |
| 09/14/2026 | Clyde Taylor | Review email and proposed stipulation sent by L. Hausman, counsel for M. Grecco; [redacted] | 0.4 | $475 | $190.00 |
| 09/15/2026 | Alyse Alban | Analyze proposed stipulation from opposing counsel, [redacted] | 0.9 | $400 | $360.00 |
| 09/16/2026 | Clyde Taylor | [redacted] | 0.8 | $475 | $380.00 |
| 09/16/2026 | Rebecca Alexander | Paralegal: Generate attorney fee report for petition proposal in connection with Grecco litigation. | 0.3 | $240 | $72.00 |
| 09/18/2026 | Annie Wiese | Research Northern District of Illinois Local Rule 54.3 requirements for fee petition; evaluate filing deadlines, pre-motion procedures, and required supporting documentation. | 0.9 | $325 | $292.50 |
| 09/18/2026 | Annie Wiese | Develop fee petition seeking recovery of attorneys' fees and costs; prepare supporting declarations and related filing materials. | 1.5 | $325 | $487.50 |
| 09/21/2026 | Annie Wiese | Further develop fee petition addressing entitlement to and reasonableness of attorneys' fees and costs; incorporating relevant case materials and supporting legal authorities. | 0.2 | $325 | $65.00 |
| 09/22/2026 | Annie Wiese | [redacted] | 0.2 | $325 | $65.00 |

| Date | Timekeeper | Description | Hours | Rate | Amount |
|---|---|---|---|---|---|
| 10/06/2026 | Annie Wiese | [redacted] | 0.6 | $325 | $195.00 |
| 10/07/2026 | Annie Wiese | [redacted] | 1.2 | $325 | $390.00 |
| 10/07/2026 | Rebecca Alexander | Paralegal: Confer with attorney Wiese regarding development of fee petition and provide related resources. | 0.2 | $240 | $48.00 |
| 10/07/2026 | Annie Wiese | [redacted] | 0.2 | $325 | $65.00 |
| 10/07/2026 | Annie Wiese | [redacted] | 1.1 | $325 | $357.50 |
| 10/07/2026 | Annie Wiese | [redacted] | 1.0 | $325 | $325.00 |
| 10/07/2026 | Rebecca Alexander | Paralegal: Research billing rates and attorney fees | 0.4 | $240 | $96.00 |
| 10/07/2026 | Annie Wiese | [redacted] | 0.7 | $325 | $227.50 |
| 10/07/2026 | Annie Wiese | [redacted] | 0.3 | $325 | $97.50 |
| 10/07/2026 | Annie Wiese | [redacted] | 0.3 | $325 | $97.50 |
| 10/08/2026 | Annie Wiese | [redacted] | 0.7 | $325 | $227.50 |
| 10/08/2026 | Annie Wiese | [redacted] | 1.1 | $325 | $357.50 |
| 10/09/2026 | Rebecca Alexander | Paralegal: Run report from billing system on attorney fees incurred to date in support of fee petition. | 0.4 | $240 | $96.00 |
| **Fee Petition Subtotal** | | | **13.8** | | **$4,682.00** |
| **TOTAL FEES SOUGHT** | | | **85.0** | | **$33,954.00** |

## Summary by Timekeeper

| Timekeeper | Hours | Fees |
|---|---|---|
| Clyde Taylor | 39.2 | $17,832.50 |
| Alyse Alban | 24.9 | $9,702.00 |
| Annie Wiese | 10.0 | $3,250.00 |
| Matthew Brown | 4.6 | $1,657.50 |
| Rebecca Alexander | 6.3 | $1,512.00 |
| **TOTAL** | **85.0** | **$33,954.00** |

# Exhibit 7

**Wednesday, November 18, 2026 at 1:43:34 PM Central Standard Time**

---

**Subject:** RE: Grecco v Block Club - today's mediation
**Date:** Tuesday, October 27, 2026 at 12:36:47 PM Central Daylight Time
**From:** Daniel DeSouza
**To:** Alyse Alban, Clyde Taylor
**CC:** Lauren Hausman, Annie Wiese
**Attachments:** image001.png, image002.png, 2026-10-27.Joint Stmt.DRAFT.docx

See my edits in track changes. You may add my /s/

---

**From:** Alyse Alban Alyse@wagenmakerlaw.com
**Sent:** Tuesday, October 27, 2026 12:29 PM
**To:** Daniel DeSouza dan@copycatlegal.com; Clyde Taylor clyde@wagenmakerlaw.com
**Cc:** Lauren Hausman lauren@copycatlegal.com; Annie Wiese Annie.Wiese@wagenmakerlaw.com
**Subject:** Re: Grecco v Block Club - today's mediation

Hello Dan,

As promised, attached is the Joint Statement we have drafted and intend to file by EOB today. If you respond before 4pm CT we will be happy to incorporate any appropriate changes based on your response, otherwise we will file as is.

–

**ALYSE ALBAN** | Attorney at Law
Wagenmaker & Oberly | *Trusted Advisors to Nonprofits*
312.626.1600 (Main) | 312.626.1615 (Direct)

**CONFIDENTIALITY NOTICE:** This email and any attachments are confidential and may constitute PRIVILEGED ATTORNEY/CLIENT information. If you believe that it has been sent to you in error, please reply to the sender that you received the message in error. Then delete it. Thank You.

---

**From:** Alyse Alban <Alyse@wagenmakerlaw.com>
**Date:** Monday, October 26, 2026 at 11:07 AM
**To:** Daniel DeSouza <dan@copycatlegal.com>; Clyde Taylor <clyde@wagenmakerlaw.com>
**Cc:** Lauren Hausman <lauren@copycatlegal.com>; Annie Wiese <Annie.Wiese@wagenmakerlaw.com>
**Subject:** Re: Grecco v Block Club - today's mediation

Hello Dan,

Our Joint Statement is due tomorrow. Please let us know what fees you agree to pay and which ones you dispute. We will send a draft of the Joint Statement over to you tomorrow morning.

–

**ALYSE ALBAN** | Attorney at Law
Wagenmaker & Oberly | *Trusted Advisors to Nonprofits*

312.626.1600 (Main) l 312.626.1615 (Direct)

**CONFIDENTIALITY NOTICE:** This email and any attachments are confidential and may constitute PRIVILEGED ATTORNEY/CLIENT information. If you believe that it has been sent to you in error, please reply to the sender that you received the message in error. Then delete it. Thank You.

---

**From:** Alyse Alban <Alyse@wagenmakerlaw.com>
**Date:** Tuesday, October 20, 2026 at 3:18 PM
**To:** Daniel DeSouza <dan@copycatlegal.com>; Clyde Taylor <clyde@wagenmakerlaw.com>
**Cc:** Lauren Hausman <lauren@copycatlegal.com>
**Subject:** Re: Grecco v Block Club - today's mediation

Hello Dan,

Thank you for confirming that you will review what we have provided. We look forward to your response.

Regards,
Alyse

–

**ALYSE ALBAN** l Attorney at Law
Wagenmaker & Oberly l *Trusted Advisors to Nonprofits*
312.626.1600 (Main) l 312.626.1615 (Direct)

**CONFIDENTIALITY NOTICE:** This email and any attachments are confidential and may constitute PRIVILEGED ATTORNEY/CLIENT information. If you believe that it has been sent to you in error, please reply to the sender that you received the message in error. Then delete it. Thank You.

# Exhibit 8

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**

MICHAEL GRECCO
PRODUCTIONS, INC.,

Plaintiff,

v.

BLOCK CLUB
CHICAGO NFP d/b/a
DNAINFO.COM,

Defendant.

Case No. 1:25-cv-11155

Hon. Franklin U. Valderrama

---

**DECLARATION OF CLYDE TAYLOR IN SUPPORT OF DEFENDANT BLOCK CLUB CHICAGO NFP'S MOTION FOR ATTORNEYS' FEES**

I, Clyde Taylor, declare as follows:

1. I am a partner with Wagenmaker & Oberly, LLC ("W&O") and oversee the Disputes Resolution Practice Group. Our law firm serves as counsel for Defendant Block Club Chicago NFP ("Block Club") in this action.
2. Our firm has represented Block Club in connection with Michael Grecco Productions, Inc.'s copyright infringement allegations since 2024. I have personal knowledge of the work performed in connection with that dispute and this litigation and have personal knowledge regarding the experience of all individuals who billed time in this litigation. I submit this Declaration in support of Block Club's Motion for Attorneys' Fees under 17 U.S.C. § 505.
3. I have practiced law since 2015 and have experience representing nonprofit organizations and clients in litigation and other legal matters.

4. Our firm represents tax-exempt organizations almost exclusively and has represented clients in copyright disputes on approximately ten occasions since I joined the firm in 2019.
5. Attorney Alyse Alban has practiced law since 2017 and has been an associate attorney at our firm since 2024.
6. Attorney Matthew Brown has practiced law since 2021 and was an associate attorney at our firm from 2021 through 2025.
7. Attorney Annie Wiese has practiced law since October 2026.
8. Paralegal Rebecca Alexander has worked as a paralegal at our firm since 2020.
9. W&O has represented Block Club in connection with Grecco's copyright infringement allegations since at least February 25, 2024, including during the pre-suit dispute and throughout this litigation.
10. In connection with that representation, W&O attorneys and legal professionals performed work including investigating and analyzing Grecco's claim, reviewing the relevant licensing materials, preparing Block Club's responsive pleadings and defenses, researching and briefing Block Club's motion for judgment on the pleadings, addressing related procedural matters, reviewing the Court's decision and judgment, and preparing Block Club's request for attorneys' fees.
11. W&O billed Block Club for legal services performed in this matter at the following hourly rates, which Block Club agreed to pay, during the years in which each timekeeper performed work on the matter:

| **Timekeeper** | **2024 Rate** | **2025 Rate** | **2026 Rate** |
|---|---|---|---|
| Clyde Taylor | $400 | $430 | $475 |
| Alyse Alban | — | $370 | $400 |

| Timekeeper | 2024 Rate | 2025 Rate | 2026 Rate |
|---|---|---|---|
| Annie Wiese | — | — | $325 / $360 |
| Matthew Brown | $350 | $375 | — |
| Rebecca Alexander | — | $240 | $240 |

12. These rates are the rates reflected in W&O's contemporaneous billing records for the work performed in this matter. They were not created for purposes of this fee petition.

13. W&O maintains contemporaneous billing and time records in the ordinary course of its business. Those records identify the professional performing the work, the date and nature of the work performed, the time expended, and the applicable billing rate. I am familiar with those records and with W&O's billing practices.

14. Attached as Exhibit A to this Declaration is a true and correct copy of the relevant billing records reflecting the work for which Block Club seeks reimbursement. Any redactions relate to attorney-client privileged communications and attorney work product that are relevant to the ongoing appeal of the District Court's ruling.

15. I reviewed the time entries submitted in support of this motion for reasonableness, duplication, clerical work, and other time that should not reasonably be included in the fee request.

16. W&O's contemporaneous billing records reflect 4.1 hours of time that W&O designated as no charge to Block Club. Block Club does not seek recovery for those hours. In preparing this fee request, W&O also excluded 1.3 hours of pre-suit time contained in entries that combined work relating to the Grecco dispute with work on other matters, 2.8 hours devoted solely to the pending appeal, and 1.6 hours reflected in post-judgment entries that

combined appellate and fee-petition work and could not be reliably allocated between those tasks. These exclusions total 5.7 charged hours and $2,193.00 in fees.

17. After those adjustments, Block Club seeks compensation for 101 hours of attorney and paralegal time, resulting in $39,958.50 in attorneys' fees.

18. In my judgment, based on my experience and familiarity with the work performed in this matter, the time reflected in the submitted records was reasonable and necessary to Block Club's defense of this action and Block Club's Fee Motion.

19. Block Club has also incurred attorneys' fees in preparing and pursuing its motion for fees and supporting materials through November 18, 2026. Those fees are reflected in W&O's contemporaneous billing records. Block Club may incur additional reasonable fees after that date in connection with briefing and resolving its fee request.

I declare under penalty of perjury that the foregoing is true and correct.

Dated: November 18, 2026

By: Clyde A. Taylor
Clyde Taylor

# EXHIBIT A

## Billing Records Supporting Defendant Block Club Chicago NFP's Motion for Attorneys' Fees

*Only time for which Block Club seeks reimbursement is included below.*

### Summary of Fees Sought

| Phase | Hours | Fees |
|---|---|---|
| Pre-Suit Copyright Dispute | 4.8 | $1,785.00 |
| District-Court Litigation Through Judgment | 66.4 | $27,487.00 |
| Fee Petition | 29.8 | $10,686.50 |
| **TOTAL** | **101.0** | **$39,958.50** |

### Detailed Time Entries

| Date | Timekeeper | Description | Hours | Rate | Amount |
|---|---|---|---|---|---|
| **Pre-Suit Copyright Dispute** | | | | | |
| 02/25/2024 | Clyde Taylor | Review and evaluate letter alleging copyright infringement by virtue of photograph of Chris Farley on DNAinfo webpage. | 0.2 | $400 | $80.00 |
| 03/06/2024 | Clyde Taylor | Review and analyze letter from CopyCat Legal regarding alleged infringement of Greco copyright. | 0.2 | $400 | $80.00 |
| 03/12/2024 | Matthew Brown | Develop response to demand letter regarding photograph by Michael Grecco; analyze demand letter; research case law regarding fair use for movie posters. | 2.5 | $350 | $875.00 |
| 03/12/2024 | Clyde Taylor | Further develop letter in response to alleged copyright violation of M. Greco copyright for Chris Farley photograph. | 0.7 | $400 | $280.00 |
| 03/13/2024 | Clyde Taylor | Further develop and finalize letter regarding Greco copyright violation allegation; prepare and send email to S. Toomey providing draft letter for review. | 0.2 | $400 | $80.00 |
| 05/20/2024 | Clyde Taylor | Review and evaluate response from CopyCat Legal regarding alleged copyright infringement on behalf of M. Greco. | 0.2 | $400 | $80.00 |
| 05/31/2024 | Clyde Taylor | Prepare and send email to S. Toomey regarding alleged infringement of M. Greco photograph and provide recommendation regarding same. | 0.2 | $400 | $80.00 |
| 09/13/2024 | Clyde Taylor | Review email from Attorney L. Hausman regarding Greco copyright dispute; prepare and end email to S. Toomey with proposed response. | 0.2 | $400 | $80.00 |
| 09/19/2024 | Matthew Brown | Analyze draft correspondence regarding alleged copyright infringement of picture featuring C. Farley; provide recommendations to attorney C. Taylor regarding same. | 0.2 | $350 | $70.00 |
| 09/27/2024 | Clyde Taylor | [redacted] finalize and send email to Attorney L. Hausman regarding Grecco copyright infringement claim. | 0.2 | $400 | $80.00 |
| **Pre-Suit Copyright Dispute Subtotal** | | | **4.8** | | **$1,785.00** |
| **District-Court Litigation Through Judgment** | | | | | |
| 09/19/2025 | Matthew Brown | Develop assessment of copyright infringement litigation; evaluate complaint and related documents regarding same; review docket and download case documents to client file. | 1.3 | $375 | $487.50 |
| 09/22/2025 | Clyde Taylor | Review and respond to email from S. Toomey regarding pending lawsuit and taking down Chris Farley images; review prior letter to Copy Cat Legal regarding same. | 0.2 | $430 | $86.00 |
| 10/01/2025 | Matthew Brown | Develop email to S. Toomey regarding copyright infringement complaint and related next steps. | 0.6 | $375 | $225.00 |
| 10/02/2025 | Clyde Taylor | Review complaint for M. Greco lawsuit; identify and analyze applicable case law regarding discovery rule in Illinois related to copyright infringement; prepare and send email to S. Toomey analyzing claims in lawsuit and providing recommendations for next steps. | 2.2 | $430 | $946.00 |
| 10/16/2025 | Clyde Taylor | Prepare and send email to S. Toomey regarding status of service of complaint; review response. | 0.1 | $430 | $43.00 |

| Date | Timekeeper | Description | Hours | Rate | Amount |
|---|---|---|---|---|---|
| 10/29/2025 | Clyde Taylor | Check court docket for filings and pending deadlines. | 0.1 | $430 | $43.00 |
| 12/02/2025 | Clyde Taylor | Review and send brief response to email from S. Toomey regarding service in Greco v. Block Club matter. | 0.2 | $430 | $86.00 |
| 12/03/2025 | Rebecca Alexander | Paralegal: Update client file and calendar in connection with service of Complaint and respective due dates. | 0.1 | $240 | $24.00 |
| 12/03/2025 | Clyde Taylor | Review Greco v. Block Club complaint and related legal issues; [redacted] | 0.5 | $430 | $215.00 |
| 12/09/2025 | Alyse Alban | Read complaint and research possible statute of limitations defense. | 1.5 | $370 | $555.00 |
| 12/10/2025 | Clyde Taylor | Review email from S. Toomey providing proof of service and Complaint; respond to same and provide update on legal research related to possible motion to dismiss. | 0.2 | $430 | $86.00 |
| 12/11/2025 | Alyse Alban | [redacted] | 2.1 | $370 | $777.00 |
| 12/12/2025 | Clyde Taylor | [redacted] | 0.4 | $430 | $172.00 |
| 12/16/2025 | Clyde Taylor | Further review research related to possible motion to dismiss; [redacted] | 1.4 | $430 | $602.00 |
| 12/16/2025 | Alyse Alban | Analyze research findings and strategize next steps for proceeding with litigation. | 0.2 | $370 | $74.00 |
| 12/17/2025 | Rebecca Alexander | Paralegal: Update client file and calendar in connection with the January 6th Initial Joint Status Report due date. | 0.1 | $240 | $24.00 |
| 12/17/2025 | Clyde Taylor | [redacted] | 2.0 | $430 | $860.00 |
| 12/18/2025 | Clyde Taylor | Strategize regarding development of Answer and Motion to Dismiss; [redacted] | 1.1 | $430 | $473.00 |
| 12/18/2025 | Alyse Alban | Analyze strategy for proceeding with litigation, begin drafting answer to complaint, declaration, and draft email to the client for additional information needed for the same for review by attorney C. Taylor. | 3.3 | $370 | $1,221.00 |
| 12/18/2025 | Rebecca Alexander | Paralegal: Conduct search on PACER online case search for Michael Grecco Productions, Inc.; Begin preparation of answer to complaint. | 0.2 | $240 | $48.00 |
| 12/20/2025 | Alyse Alban | Further develop answer to complaint. | 0.8 | $370 | $296.00 |
| 12/21/2025 | Alyse Alban | Finalize answer and declaration and send to attorney C. Taylor for review. | 0.3 | $370 | $111.00 |
| 12/22/2025 | Rebecca Alexander | Paralegal: Evaluate local rules related to appearance filing and corporate disclosure filing requirements; Confer with attorney Taylor regarding the same and update file accordingly. | 0.2 | $240 | $48.00 |

| Date | Timekeeper | Description | Hours | Rate | Amount |
|---|---|---|---|---|---|
| 12/22/2025 | Clyde Taylor | Further develop Answer and declaration; [redacted] | 2.5 | $430 | $1,075.00 |
| 12/23/2025 | Rebecca Alexander | Paralegal: Prepare attorney appearance, notification of affiliates, declaration and exhibit binder for the Grecco matter. | 1.5 | $240 | $360.00 |
| 12/23/2025 | Clyde Taylor | Further develop, finalize, and coordinate filing of Answer, notification of affiliates, and appearance; perform edits to declaration of S. Toomey; coordinate signature of same; perform edits to declaration of R. Alexander; review and finalize exhibits. | 2.5 | $430 | $1,075.00 |
| 12/23/2025 | Alyse Alban | [redacted] | 0.4 | $370 | $148.00 |
| 12/23/2025 | Rebecca Alexander | Paralegal: Send declaration to S. Toomey via Docusign; File Answer to complaint with supporting exhibits and attorney appearance via PACER eFiling system. | 0.8 | $240 | $192.00 |
| 12/30/2025 | Clyde Taylor | Prepare joint status report; prepare and send email to opposing counsel, D. DeSouza regarding same and preparation for filing report by 1/6/26. | 0.6 | $430 | $258.00 |
| 01/02/2026 | Clyde Taylor | Further develop proposed initial joint status report; research assigned judge and magistrate judge; prepare and send email to S. Toomey providing recommendations related to joint status report and to consent to magistrate judge. | 0.9 | $475 | $427.50 |
| 01/12/2026 | Clyde Taylor | Prepare and send email to S. Toomey regarding case status including filing of initial joint status report and Plaintiff's offer to enter into settlement discussions and recommendation regarding same. | 0.2 | $475 | $95.00 |
| 01/15/2026 | Clyde Taylor | Correspond with S. Toomey regarding potential settlement; prepare and send email to L. Hausman providing settlement offer. | 0.5 | $475 | $237.50 |
| 01/16/2026 | Clyde Taylor | Prepare and send email to L. Hausman, counsel for CopyCat Legal / M. Grecco, providing response to settlement offer. | 0.2 | $475 | $95.00 |
| 01/27/2026 | Alyse Alban | Begin drafting motion for judgment on the pleadings. | 1.8 | $400 | $720.00 |
| 01/29/2026 | Alyse Alban | Further draft motion for judgment on the pleadings. | 3.2 | $400 | $1,280.00 |
| 01/29/2026 | Clyde Taylor | [redacted] | 0.2 | $475 | $95.00 |
| 01/30/2026 | Clyde Taylor | Prepare and serve document requests and interrogatories on Plaintiff M. Grecco; receive discovery requests from M. Grecco and save to client file. | 1.0 | $475 | $475.00 |
| 02/01/2026 | Alyse Alban | Continue drafting motion for judgment on the pleadings and conduct additional research to substantiate arguments. | 1.1 | $400 | $440.00 |
| 02/02/2026 | Alyse Alban | Continue drafting motion for judgment on the pleadings. | 1.2 | $400 | $480.00 |
| 02/03/2026 | Alyse Alban | Finalize draft motion for judgment on the pleadings and send to attorney C. Taylor for review. | 0.9 | $400 | $360.00 |
| 02/03/2026 | Clyde Taylor | Review draft motion for judgment on the pleading; perform initial edits. | 0.3 | $475 | $142.50 |
| 02/04/2026 | Rebecca Alexander | Paralegal: Prepare Motion to Dismiss draft; Evaluate local rules for filing. | 0.5 | $240 | $120.00 |
| 02/04/2026 | Clyde Taylor | Further develop memo in support of motion for judgment on the pleadings; [redacted]. | 4.0 | $475 | $1,900.00 |
| 02/05/2026 | Alyse Alban | Conduct final review of draft motion for judgment on the pleadings for filing. | 0.5 | $400 | $200.00 |
| 02/05/2026 | Rebecca Alexander | Paralegal: Finalize and file Motion, Memorandum and exhibit via PACER eFiling system. | 0.5 | $240 | $120.00 |

| Date | Timekeeper | Description | Hours | Rate | Amount |
|---|---|---|---|---|---|
| 02/05/2026 | Clyde Taylor | Further develop motion to dismiss; [redacted] | 2.7 | $475 | $1,282.50 |
| 02/09/2026 | Clyde Taylor | Prepare and send email to Attorney L. Hausman, counsel for M. Grecco, requesting consent to stay discovery in light of pending motion for judgment on the pleadings; prepare and send email to S. Toomey regarding same and advising of briefing schedule on motion for judgment on the pleadings. | 0.4 | $475 | $190.00 |
| 02/12/2026 | Clyde Taylor | Prepare draft motion to stay discovery, pending outcome of motion for judgment on the pleadings; prepare and send email to L. Hausman, providing draft motion for review and feedback. | 0.6 | $475 | $285.00 |
| 02/13/2026 | Clyde Taylor | Further develop and finalize motion to stay discovery pending resolution of motion for judgment on the pleadings; coordinate filing of same. | 0.6 | $475 | $285.00 |
| 02/13/2026 | Rebecca Alexander | Paralegal: File Motion to Stay Discovery via PACER eFiling system; Update client file and calendar with hearing information for the same. | 0.6 | $240 | $144.00 |
| 02/19/2026 | Clyde Taylor | Prepare for and attend court hearing on motion to stay; phone call with Attorney D. DeSouza, counsel for Grecco Productions, related to motion to stay and possible settlement; prepare and send email to S. Toomey regarding court hearing outcome and recommending next steps regarding motion for judgment on the pleadings and settlement negotiations; review response to same. | 1.0 | $475 | $475.00 |
| 02/26/2026 | Clyde Taylor | [redacted] | 0.2 | $475 | $95.00 |
| 03/06/2026 | Alyse Alban | Review response brief and develop reply brief strategy; send proposed strategy to C. Taylor for review and further analysis. | 0.9 | $400 | $360.00 |
| 03/06/2026 | Clyde Taylor | Review response to motion for judgment on the pleadings, filed by Plaintiff Grecco; strategize regarding response to same; conduct initial review of cases cited in Grecco's response. | 0.4 | $475 | $190.00 |
| 03/10/2026 | Alyse Alban | Draft reply brief for motion for judgment on the pleadings and conduct research regarding the same. Send to C. Taylor for review and further development. | 4.6 | $400 | $1,840.00 |
| 03/11/2026 | Clyde Taylor | Further review response to motion for judgment on the pleadings filed by Plaintiff; develop reply brief in support of same. | 0.6 | $475 | $285.00 |
| 03/12/2026 | Clyde Taylor | Further develop reply in support of motion for judgment on the pleadings; [redacted] | 4.2 | $475 | $1,995.00 |
| 03/12/2026 | Alyse Alban | Review and provide edits and general feedback on revised reply brief for filing. | 0.8 | $400 | $320.00 |
| 03/13/2026 | Clyde Taylor | Further develop, finalize, and coordinate filing of reply brief in support of motion for judgment on the pleadings; [redacted] | 3.2 | $475 | $1,520.00 |
| 03/13/2026 | Rebecca Alexander | Paralegal: Review reply brief in support of motion; Finalize and file the same via PACER eFiling system. | 0.5 | $240 | $120.00 |
| 08/18/2026 | Clyde Taylor | Review court ruling on motion for judgment on pleadings; prepare and send email to S. Toomey summarizing ruling and addressing next steps including obtaining costs. | 0.3 | $475 | $142.50 |
| 08/18/2026 | Alyse Alban | Review and analyze the court's order granting motion for judgment on the pleadings. | 0.4 | $400 | $160.00 |
| **District-Court Litigation Through Judgment Subtotal** | | | **66.4** | | **$27,487.00** |
| **Fee Petition** | | | | | |

| Date | Timekeeper | Description | Hours | Rate | Amount |
|---|---|---|---|---|---|
| 08/21/2026 | Clyde Taylor | [redacted] | 0.4 | $475 | $190.00 |
| 09/14/2026 | Clyde Taylor | Review email and proposed stipulation sent by L. Hausman, counsel for M. Grecco; [redacted] | 0.4 | $475 | $190.00 |
| 09/15/2026 | Alyse Alban | Analyze proposed stipulation from opposing counsel, [redacted] | 0.9 | $400 | $360.00 |
| 09/16/2026 | Clyde Taylor | [redacted] | 0.8 | $475 | $380.00 |
| 09/16/2026 | Rebecca Alexander | Paralegal: Generate attorney fee report for petition proposal in connection with Grecco litigation. | 0.3 | $240 | $72.00 |
| 09/18/2026 | Annie Wiese | Research Northern District of Illinois Local Rule 54.3 requirements for fee petition; evaluate filing deadlines, pre-motion procedures, and required supporting documentation. | 0.9 | $325 | $292.50 |
| 09/18/2026 | Annie Wiese | Develop fee petition seeking recovery of attorneys' fees and costs; prepare supporting declarations and related filing materials. | 1.5 | $325 | $487.50 |
| 09/21/2026 | Annie Wiese | Further develop fee petition addressing entitlement to and reasonableness of attorneys' fees and costs; incorporating relevant case materials and supporting legal authorities. | 0.2 | $325 | $65.00 |
| 09/22/2026 | Annie Wiese | [redacted] | 0.2 | $325 | $65.00 |
| 10/06/2026 | Annie Wiese | [redacted] | 0.6 | $325 | $195.00 |
| 10/07/2026 | Annie Wiese | [redacted] | 1.2 | $325 | $390.00 |
| 10/07/2026 | Rebecca Alexander | Paralegal: Confer with attorney Wiese regarding development of fee petition and provide related resources. | 0.2 | $240 | $48.00 |
| 10/07/2026 | Annie Wiese | [redacted] | 0.2 | $325 | $65.00 |
| 10/07/2026 | Annie Wiese | [redacted] | 1.1 | $325 | $357.50 |
| 10/07/2026 | Annie Wiese | [redacted] | 1.0 | $325 | $325.00 |
| 10/07/2026 | Rebecca Alexander | Paralegal: Research billing rates and attorney fees | 0.4 | $240 | $96.00 |
| 10/07/2026 | Annie Wiese | [redacted] | 0.7 | $325 | $227.50 |
| 10/07/2026 | Annie Wiese | [redacted] | 0.3 | $325 | $97.50 |
| 10/07/2026 | Annie Wiese | [redacted] | 0.3 | $325 | $97.50 |
| 10/08/2026 | Annie Wiese | [redacted] | 0.7 | $325 | $227.50 |
| 10/08/2026 | Annie Wiese | [redacted] | 1.1 | $325 | $357.50 |
| 10/09/2026 | Rebecca Alexander | Paralegal: Run report from billing system on attorney fees incurred to date in support of fee petition. | 0.4 | $240 | $96.00 |
| 10/09/2026 | Annie Wiese | Incorporate fee report into motion for attorneys' fees; research additional supporting legal authority and integrate relevant sources into fee petition. | 0.8 | $325 | $260.00 |
| 10/09/2026 | Annie Wiese | Research legal authority concerning recoverability of pre-suit litigation fees; incorporate supporting case law into fee petition and revise related sections to strengthen legal analysis and supporting argument; revise declaration to reflect 2024-2026 billing rates. | 0.9 | $325 | $292.50 |

| Date | Timekeeper | Description | Hours | Rate | Amount |
|---|---|---|---|---|---|
| 10/09/2026 | Annie Wiese | Prepare billing exhibit detailing attorney hours and fees incurred in representation of Block Club during 2024-2026 Grecco copyright litigation. | 0.4 | $325 | $130.00 |
| 10/12/2026 | Annie Wiese | Refine fee petition and incorporate supporting billing exhibits to ensure accuracy, completeness, and consistency of requested attorneys' fees. | 1.2 | $325 | $390.00 |
| 10/13/2026 | Annie Wiese | Revise fee petition to address applicable requirements of Northern District of Illinois Local Rule 54.3(b). | 0.3 | $325 | $97.50 |
| 10/15/2026 | Annie Wiese | Research Northern District of Illinois Local Rule 54.3 requirements governing attorneys' fee motions, including pre-motion disclosure and filing deadlines. | 0.4 | $325 | $130.00 |
| 10/15/2026 | Alyse Alban | Confer with attorney C. Taylor regarding fee petition timeline provided for in Local Rule 54.3. Research case law regarding relevancy of timeline to filing of fee petition. Summarize findings and provide best next steps to attorney C. Taylor. Provide guidance on letter needed to send to opposing counsel regarding fee petition to attorney A. Wiese. Review, revise, and finalize letter to opposing counsel regarding the same. | 2.0 | $400 | $800.00 |
| 10/15/2026 | Clyde Taylor | Review and further develop letter to Grecco's counsel regarding fee petition and meet and confer requirements; review billing entries to be included with fee petition and perform redactions to attorney-client privileged entries, prior to providing to Grecco's counsel. | 0.6 | $475 | $285.00 |
| 10/15/2026 | Annie Wiese | Develop draft correspondence to opposing counsel regarding attorneys' fee request; analyze N.D. Ill. Local Rule 54.3 disclosure, filing, and joint-statement deadlines; confirm fee amounts, rates, exclusions, and pre-suit fee authority; prepare recommended language regarding Block Club's compliance and response deadline for Grecco. | 0.8 | $325 | $260.00 |
| 10/15/2026 | Annie Wiese | Revise correspondence to opposing counsel regarding attorneys' fee request to incorporate supervising attorney feedback; prepare and insert fee-summary table detailing hours, rates, and amounts sought; refine presentation of fee information for Local Rule 54.3 disclosure; review Exhibit B and redact portions of billing narratives protected by attorney-client privilege or work product doctrine. | 0.6 | $325 | $195.00 |
| 10/26/2026 | Annie Wiese | Further develop draft joint statement regarding attorneys' fees; refine fee calculations, state Respondent Block Club's position and remaining disputes under Local Rule 54.3(e), and prepare draft for attorney review and transmission to opposing counsel. | 0.4 | $325 | $130.00 |
| 10/26/2026 | Alyse Alban | Send email to opposing counsel following up on fees they agree to pay and fees that are disputed. Confer with attorney C. Taylor regarding joint statement due tomorrow. | 0.1 | $400 | $40.00 |
| 10/27/2026 | Alyse Alban | Review and revise joint statement. Send to opposing counsel for review prior to filing with the court. Confer with opposing counsel regarding improper argument in Joint Statement. Further revise Joint Statement due to improper nature of Grecco's position. | 1.6 | $400 | $640.00 |
| 10/27/2026 | Clyde Taylor | Review and further develop joint statement regarding attorneys' fees; coordinate filing of same. | 0.4 | $475 | $190.00 |
| 10/27/2026 | Rebecca Alexander | Paralegal: File joint statement via PACER eFiling system. | 0.2 | $240 | $48.00 |
| 10/28/2026 | Clyde Taylor | Coordinate development of fee petition; review minute entry from court declining to stay petition and settling deadline for same. | 0.3 | $475 | $142.50 |
| 10/28/2026 | Annie Wiese | Review and further develop attorneys' fee petition in response to District Court declining to stay fee petition; analyze Northern District of Illinois procedural requirements and supporting authority concerning fee disclosures; review opposing counsel correspondence regarding fee disclosures and joint statement process; develop arguments addressing substantial compliance, lack of prejudice, and timeliness. | 0.8 | $360 | $288.00 |
| 10/28/2026 | Annie Wiese | Further develop attorneys' fee petition in light of court-ordered briefing schedule; analyze prior Order's entered against Grecco based on procedural non-compliance; review record and docket history to develop argument regarding Grecco's lack of diligence in prosecuting case. | 0.6 | $360 | $216.00 |
| 10/28/2026 | Rebecca Alexander | Paralegal: Retrieve minute entries and related notices filed from the online docket for Grecco matter. | 0.1 | $240 | $24.00 |
| 10/29/2026 | Alyse Alban | Review minute entry and relay analysis of the same and strategy for fee petition to attorney C. Taylor. | 0.1 | $400 | $40.00 |

| Date | Timekeeper | Description | Hours | Rate | Amount |
|---|---|---|---|---|---|
| 10/30/2026 | Annie Wiese | Review and finalize attorneys' fee petition regarding updated recoverable fee amount; analyze billing records to identify additional compensable fee-petition work incurred after initial Local Rule 54.3 disclosure; reconcile hours, rates, and fee totals; revise hourly-rate and billing-judgment sections, supporting fee tables, declaration figures, and total requested fees | 0.5 | $360 | $180.00 |
| 11/12/2026 | Rebecca Alexander | Paralegal: Update client file and calendar with briefing order and schedule in connection with fee petition. | 0.3 | $240 | $72.00 |
| 11/17/2026 | Clyde Taylor | Review and further develop Fee Motion; incorporate procedural faults warranting fee award. | 1.0 | $475 | $475.00 |
| 11/17/2026 | Rebecca Alexander | Paralegal: Review and confer with attorney Taylor regarding fee petition and finalization of the same. | 0.1 | $240 | $24.00 |
| 11/17/2026 | Annie Wiese | Review and finalize attorneys' fee petition for filing; verify Northern District of Illinois page-limit requirements and fee-motion procedures; analyze declaration-signature requirements; research comparable market-rate evidence and Northern District fee awards to support hourly rates; evaluate additional authority and evidentiary support for rate reasonableness and implement corresponding petition revisions. | .5 | $360 | $180.00 |
| 11/18/2026 | Clyde Taylor | Further develop, finalize, and file Fee Motion; address Grecco's objections as set forth in the Parties' Joint Statement. | 1.0 | $475 | $475.00 |
| | | | | | |
| **Fee Petition Subtotal** | | | **29.8** | | **$10,686.50** |
| **TOTAL FEES SOUGHT** | | | **101.0** | | **$39,958.50** |

## Summary by Timekeeper

| Timekeeper | Hours | Fees |
|---|---|---|
| Clyde Taylor | 42.5 | $19,400.00 |
| Alyse Alban | 28.7 | $11,222.00 |
| Annie Wiese | 18.2 | $5,999.00 |
| Matthew Brown | 4.6 | $1,657.50 |
| Rebecca Alexander | 7.0 | $1,680.00 |
| **TOTAL** | **101.0** | **$39,958.50** |

# Exhibit 9

**UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| RMR HOME SOLUTIONS LLC d/b/a PROTAXAPPEAL and RICK ROBIN,<br><br>Plaintiffs/Counter-Defendants,<br><br>v.<br><br>DANIEL FARRIS,<br><br>Defendant/Counter-Plaintiff. | No. 23 CV 7228<br><br>Judge Manish S. Shah |

**MEMORANDUM OPINION AND ORDER**

Plaintiffs and counter-defendants Rick Robins and his company ProTaxAppeal sued defendant Daniel Farris, seeking a declaratory judgment of noninfringement of Farris's registered copyright. Farris filed a counterclaim for copyright infringement. I granted plaintiffs' motion for summary judgment and held that they were entitled to a declaratory judgment of noninfringement. They now move for attorney's fees pursuant to 17 U.S.C. § 505. For the reasons discussed below, the motion is granted in part, denied in part.

## I. Legal Standards

Section 505 of the Copyright Act authorizes an award of attorney's fees to the prevailing party. 17 U.S.C. § 505. In deciding whether to award fees to the prevailing party, courts consider "frivolousness, motivation, objective unreasonableness (both in the factual and in the legal components of the case) and the need in particular circumstances to advance considerations of compensation and deterrence." *Fogerty v.*

*Fantasy, Inc.*, 510 U.S. 517, 534 n.19 (1994) (citation omitted). Prevailing plaintiffs and prevailing defendants are treated alike. *Id.* at 534.

## II. Background

I assume familiarly with the earlier order and opinion granting plaintiffs' motion for summary judgment, as well as with the underlying facts of this case, so I do not repeat them in detail here. [96].[1] Plaintiff RMR Home Solutions LLC—operating under the name ProTaxAppeal—was founded by plaintiff Rick Robin in 2005. [82] ¶ 1. ProTaxAppeal specializes in managing appeals for property owners to reduce their tax liabilities. [82] ¶ 1. Robin developed an Excel spreadsheet to assist with his analysis. [82] ¶ 4.

Robin met defendant Daniel Farris in the mid-1980s. [82] ¶ 2. In 2011, Robin pursued a successful property tax appeal on Farris's behalf and provided Farris with a spreadsheet of the data he used for the appeal. [82] ¶ 4. Farris then developed a software prototype that allowed ProTaxAppeal not to have to manually gather and enter data into the spreadsheet. [88] ¶ 7. For the next decade, Farris continued to update and develop the software, which was custom-made for Robin's business. [82] ¶¶ 47, 39.

In 2023, a disagreement arose between the parties and Farris eventually revoked Robin's access to the software. [82] ¶ 63; [88] ¶ 20. Farris's counsel sent Robin a draft complaint for copyright infringement over Robin's use of the software, leading

[1] Bracketed numbers refer to entries on the district court docket and page numbers are taken from the CM/ECF header placed at the top of the filing.

plaintiffs to file the present lawsuit seeking, in part, a declaratory judgment for noninfringement. [85-1] at 299; [1]. In response, Farris filed a counterclaim for copyright infringement. [18]. Plaintiffs moved for summary judgment and to dismiss the counterclaim, which I granted. [96]. Plaintiffs now move for attorney's fees and related nontaxable expenses. [103].

## III. Analysis

### A. Application of Section 412 and 505

Defendant argues that plaintiffs' claim for attorney's fees is barred by § 412(1) of the Copyright Act. [108] at 8–11. But § 412 has a role to play only in cases involving infringement; the statute does not apply to cases involving the absence of infringement. Section 412(1) states that (in certain circumstances), "no award of statutory damages or attorney's fees, as provided by sections 504 and 505, shall be made for … any infringement of copyright in an unpublished work commenced before the effective date of its registration." 17 U.S.C. § 412(1). In this case there was no infringement because Robin was a joint author of the software and thus could not infringe on Farris's copyright as a matter of law. [96] at 10. Absent an "infringement," § 412(1) does not apply. And Farris's contention that his § 412 argument aligns with plaintiffs' position in their motion for summary judgment does not advance his cause. *See* [108] at 9 (citing [68]). Whether Farris could have recovered attorney's fees if he had succeeded on his counterclaim for copyright infringement is a question distinct from whether plaintiffs can recover attorney's fees for establishing noninfringement as a matter of law. Plaintiffs did not infringe, so § 412 does not apply (irrespective of

the timing of the copyright registration). The cases cited by defendant do not contradict this interpretation of the statute because none of the cases involve claims for fees where the court had found noninfringement as a matter of law. *See* [108] at 9 (citing *Budget Cinema, Inc. v. Watertower Assocs.*, 81 F.3d 729 (7th Cir. 1996); *Unicolors, Inc. v. H&M Hennes & Mauritz, L.P.*, 595 U.S. 178 (2022); and *NLFC, Inc. v. Devcom Mid-Am., Inc.*, 1994 WL 16484076 (N.D. Ill. Jan. 4, 1994)).

Defendant also argues that "joint authorship determinations" are "fundamentally different from typical copyright disputes involving infringement claims and therefore, outside the remedial framework of Section 505." [108] at 11. This argument is without merit. None of his three cited cases share the same procedural posture as the present action; one is the appeal of a district court granting a preliminary injunction, *see Erickson v. Trinity Theatre, Inc.*, 13 F.3d 1061 (7th Cir. 1994); one is the appeal of a district court granting partial summary judgment, *see Janky v. Lake Cnty. Convention & Visitors Bureau*, 576 F.3d 356 (7th Cir. 2009); and one declares copyright ownership, but stops short of ruling on infringement, *see Woods v. Resnick*, 725 F.Supp.2d 809 (W.D. Wis. 2010). Although all three cases, like this one, concern joint authorship, they did not address whether at the end of the case, one side prevailed against the other. Motions for attorney's fees do not arise until after the parties know the outcome of the underlying litigation. The fact that defendant found no precedent applying § 505 to joint authorship cases, [108] at 10,

does not mean that the statute—which on its face allows for the award of reasonable attorney's fees in "any civil action under" Title 17—does not apply.[2]

### B. *Fogerty* Analysis

Plaintiffs are not precluded from recovering attorney's fees. The question is whether such an award is appropriate in the instant case. In *Fogerty v. Fantasy, Inc.*, 510 U.S. 517 (1994), the Supreme Court "recognized the broad leeway § 505 gives to district courts—but also established several principles and criteria to guide their decisions." *Kirtsaeng v. John Wiley & Sons, Inc.*, 579 U.S. 197, 202 (2016). A court may not award attorney's fees as a matter of course but rather must make a case-by-case assessment. *Id.* The Court also approved "several nonexclusive factors" to inform a court's fee-shifting decisions: "frivolousness, motivation, objective unreasonableness, and the need in particular circumstances to advance considerations of compensation and deterrence." *Id.* (quoting *Fogerty*, 579 U.S. at 534 n.19) (cleaned up).

Specifically, courts must "give substantial weight to the objective reasonableness of the losing party's position." *Timothy B. O'Brien LLC v. Knott*, 962 F.3d 348, 351 (7th Cir. 2020) (citing *Kirtsaeng*, 579 U.S. at 209–10). According to Farris, the "only issue" was whether plaintiffs had joint authorship rights in the software. [108] at 6. Though he ultimately lost on his claim for exclusive ownership,

---

[2] Contrary to defendant's argument, there is relevant precedent on this issue. In *Sullivan v. Flora*, 936 F.3d 562 (7th Cir. 2019), which defendant cited in his summary judgment opposition, [85] at 3, 12, the court approved the applicability of § 505 in a case over joint authorship. The court also evaluated and rejected the defendant's § 412 defense before turning to the discretionary analysis provided for in § 505. *Sullivan*, 936 F.3d at 573.

Farris contends that he never tried to mislead the Copyright Office nor made frivolous arguments and therefore his conduct was not objectively unreasonable. [108] at 4–6. Plaintiffs argue that settled law precluded Farris's claim of sole authorship. [103] at 5. Not every losing claim is objectively unreasonable. *See Kirtsaeng*. 579 U.S. at 202 (noting that courts must make particularized, case-by-case assessments). But even though Farris did not mislead anyone in pursuit of his claim, it was so weak that it was not reasonable to pursue. The parties worked together for over ten years. [82] ¶ 47. Farris essentially copied the formatting of Robin's spreadsheet to make the prototype. [82] ¶¶ 5–6. Farris's argument that he was the sole author of the product since its inception was an objectively flawed theory. Arguing that he was the sole author because he registered the copyright was a legally flawed theory. And as explained above, continuing to make deficient arguments about the applicability of § 412 cuts against the reasonableness of defendant's litigation strategy.

Further, within a *Fogerty* analysis, the two most important considerations in deciding whether to award fees "are the strength of the prevailing party's case and the amount of damages or other relief the party obtained." *Klinger v. Conan Doyle Est.*, 761 F.3d 789, 791 (7th Cir. 2014) (quoting *Assessment Techs. of Wis. v. WIREdata, Inc.*, 361 F.3d 434, 436–37 (7th Cir. 2004)). As a consequence of the successful defense of an infringement suit, the defendant is entitled to a "very strong" presumption in favor of being awarded fees. *Id.* (quoting *Assessment Techs.*, 361 F.3d at 437).

But the alleged infringer does not always take the formal role of "defendant." "[A] declaratory judgment plaintiff in a copyright case is in effect a defendant permitted to precipitate the infringement suit." *Id.* at 792. Here, plaintiffs filed their declaratory judgment action only after Farris's lawyer sent them a draft complaint for copyright infringement (and ultimately became a defendant in Farris's counterclaim). [85-1] at 299; [18].

Farris fails to overcome the presumption that plaintiffs—as successful defenders against a claim of infringement—are entitled to attorney's fees. The prevailing party's case was strong. *See Assessment Techs.*, 361 F.3d at 436. Even giving Farris the benefit of all reasonable inferences, I concluded at summary judgment that Robin and Farris were joint authors and that plaintiffs were entitled to a declaratory judgment of noninfringement. [96]. In other words, the facts and law conclusively favored plaintiffs' position.

The amount of damages or other relief that the prevailing party received also supports awarding attorney's fees. A meritorious defense, or in this case, a meritorious declaratory judgment claim, which leads to no monetary award presumptively entitles the noninfringer to fees. *See Klinger*, 761 F.3d at 791. "For without the prospect of such an award, an infringement defendant might be forced into a nuisance settlement or deterred altogether from exercising its rights." *Id.*

(cleaned up). Thus, taking into consideration (and properly weighing) the factors underlying § 505, plaintiffs are entitled to reasonable attorney's fees.[3]

### C. Reasonableness of Fees

Farris argues that plaintiffs' attorney's fees and nontaxable expenses are unreasonable and unnecessary. [108] at 11–12. Plaintiffs respond that Farris has waived this argument for failing to participate in the process articulated by Local Rule 54.3. [109] at 1–4. Local Rule 54.3 provides that parties "shall confer and attempt in good faith to agree on the amount of fees or related nontaxable expenses that should be awarded prior to filing a fee motion." N.D. Ill. Local R. 54.3(d). As part of this process, "the parties shall specifically identify" all hours, billing rates, and expenses that will and will not be objected to and the basis of any objection. *Id.*

In response to plaintiffs' December 29, 2025 correspondence setting forth plaintiffs' demand for attorney's fees and nontaxable expenses, defendant stated only that plaintiffs were not entitled to fees pursuant to § 412. [103-5] at 3. Defendant did not challenge the fee amount. Plaintiffs noted this omission in their January 5, 2026 reply and requested that defendant "proceed with the information exchange required

---

[3] The balance of the other *Fogerty* factors favors an award of fees. Farris argues that his motivation in filing or contesting the action was not questionable and that there were "no ill motivations by the parties here." [108] at 7. Yet the facts presented at summary judgment tell a different story—one of a soured relationship between colleagues leading to litigation threats and attempted corporate sabotage. *See* [96] at 6. Whether awarding fees would advance considerations of compensation and deterrence is neutral. Compensation promotes the pursuit of a meritorious defense. *See Klinger*, 761 F.3d at 791. At the same time, there is no evidence to suggest that Farris is a frequent litigant and needs to be deterred from pursuing similar conduct in the future.

by Local Rule 54.3." [103-5] at 2. After defendant failed to do so, plaintiffs filed their present motion for fees and expenses.

Defendant contends that he complied with the rule "procedurally and in spirit." [108] at 13. But this assertion is not supported by the record. Defendant "never filed specific objections" and thus plaintiffs were "denied an opportunity to respond by clarifying or supplementing [their] records." *S Indus., Inc. v. Centra 2000, Inc.*, 249 F.3d 625, 628 (7th Cir. 2001). Defendant took a risk by categorically denying that plaintiffs were entitled to fees and not addressing what would happen if he was wrong on that point. He has not meaningfully participated in the process required by Rule 54.3 and thus waived objections to plaintiffs' fee petition.

That said, courts have the discretion to deny or reduce an award of attorney's fees, even where the opposing party has waived any objections. *See* 17 U.S.C. § 505 (noting that the court *may* award a *reasonable* attorney's fee). Despite his waiver, defendant contends that plaintiffs' claimed fees were excessive (for example, plaintiffs' claimed fees were nearly three times the value of defendant's attorney's fees). [108] at 11. But an attorney's efficiency (or lack thereof) is not necessarily a sign of reasonableness. It is reasonable that the party that moved for summary judgment would have spent more time preparing the motion (and the accompanying Rule 56.1 statement) than the responding party. Further, plaintiffs' time logs are clear and sufficiently detailed.[4] Litigation—especially litigation that involves extensive

[4] Plaintiffs reduced (or did not claim) fees for the time spent pursuing their state-law tortious interference claim, which was dismissed after I declined to exercise supplemental jurisdiction

discovery, an amended complaint, a counterclaim, attempted settlement, and a motion for summary judgment—is an expensive and time-consuming undertaking. Indeed, litigation in this case commenced in 2023 and the present motion was not briefed until 2026.

Plaintiffs argue that their hourly rates (between $605 and $800 per hour) "are supported by the current market and are consistent with prevailing rates in this district." [103] at 9. There is no evidence that the client actually paid the bills. *See Assessment Techs.*, 351 F.3d at 438 ("The best evidence of the value of the lawyer's services is what the client agreed to pay him."). But while defendant challenges the *number* of hours billed by plaintiffs as excessive, he does not contend that the rates were unreasonable. Plaintiffs' rates are not inconsistent with market rates for copyright litigation in the Chicago area. Thus, even if defendant had not waived his objections, I find that the requested attorney's fees are reasonable.

However, I decline to award the requested nontaxable expenses. Though § 505 states that courts may allow the recovery of "full costs," this term is limited to the costs specified in 28 U.S.C. §§ 1821 and 1920. *See Rimini Street, Inc. v. Oracle USA, Inc.*, 586 U.S. 334, 346 (2019). Plaintiffs have already sought (and been awarded) taxable expenses. *See* [99]; [104]. The nontaxable expenses they now seek—for "document hosting and storage services" and "expert witness fees"—are not permitted under § 505. [103-1] at 2. *See, e.g.*, *Rimini Street*, 586 U.S. at 340 (noting that the

---

following my grant of a declaratory judgment of noninfringement. [103-1]; [103-2]; [103-3]; [96] at 11.

Copyright Act does not authorize an award for expenses such as expert witness fees or e-discovery expenses).

## IV. Conclusion

Plaintiffs' motion for attorney's fees, [103], is granted in part, denied in part. The court awards attorney's fees in the amount of $349,626.25. The court denies plaintiffs' request for an award of nontaxable expenses.

ENTER:

Manish S. Shah
United States District Judge

Date: September 16, 2026

# Exhibit 10

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

BROWNMARK FILMS LLC,

Plaintiff,

v.

COMEDY PARTNERS, MTV NETWORKS, PARAMOUNT PICTURES CORPORATION, SOUTH PARK DIGITAL STUDIOS LLC, and VIACOM INTERNATIONAL INC.,

Defendants.

Case No. 10-CV-1013-JPS

ORDER GRANTING ATTORNEY FEES AND COSTS

On July 6, 2011, this Court dismissed Brownmark Films' suit with prejudice. (Docket #23). Brownmark has since appealed that decision. (Docket #26).

However, the issue of attorney fees and costs still remains with this Court for decision. The parties have filed numerous documents on this issue. Aside from the standard issues of attorney fees and costs, the parties' filings also raise several procedural issues. After recounting the case background, the Court must dispense with those procedural issues first. The Court will then turn to the issue of attorney fees and costs, ultimately granting the defendants' motions for costs and fees.

1. Background

Brownmark initiated this suit in November 2010, alleging willful copyright violation by the defendants. Brownmark sought: (1) statutory damages; (2) a declaration that the defendants willfully, both directly and secondarily, infringed upon Brownmark's copyrights; (3) an injunction

requiring the defendants to cease any direct or indirect infringement; and (4) further relief, including attorneys' fees and pre- and post-judgment interest. (Docket #1).

Rather than submit an answer, on February 22, 2011, defendants filed a motion to dismiss. (Docket #8). After Brownmark's response and the defendants' reply were filed, the Court granted the defendants' motion. (Docket #16, #22, #23). On July 6, 2011, the Court dismissed all of Brownmark's claims, finding that the defendants' actions were protected as fair use. (Docket #23). Brownmark has appealed this decision to the United States Court of Appeals for the Seventh Circuit. (Docket #26–#30).

The defendants, as prevailing parties in the District Court, then filed the present motion seeking attorney fees and costs. (Docket #34). The issue has now been fully briefed. (Docket #34–#42). To provide an adequate basis on which to decide this issue, the Court will first set forth the factual basis for Brownmark's suit, as well as the procedural posture of this case.

1.1 Brownmark's Copyright Claims

Brownmark is a purported co-owner of a copyright in the "What What (In the Butt)" music video ("WWITB"). (Am. Compl. ¶¶ 11-13). The video features a male vocalist repeatedly singing the title of the video and several derivations thereof accompanied by a series of surreal images. Perhaps unsurprisingly, the video went "viral," and currently has over 43 *million* views on Youtube.[1]

Shortly thereafter, the defendants aired an episode of the television series South Park, titled "Canada on Strike," in which one of the show's

[1] Samwell, "What What (In the Butt)." Uploaded Feb. 14, 2007, by Brownmark Films. Available at: http://www.youtube.com/watch?v=fbGkxcY7YFU.

characters creates a video that is very similar to Brownmark's original WWITB video. (Am. Compl. ¶ 14). In the South Park version, which lasts fifty-eight seconds, the South Park character sings many of the same lyrics as are featured in the original WWITB video; the South Park version also features surreal imagery, similar to that in the original. (*Id.*). In the episode—much like in reality for Brownmark—the character's video becomes a viral hit. (*Id.*). However, much to the chagrin of the South Park characters—and in a result that may mirror reality a bit too closely for Brownmark—there are no riches of "internet money" to be had, despite the popularity of their work. In a classic bit of art imitating and commenting upon life, the South Park characters learn that it is difficult to convert viral internet fame into real money; Brownmark's proprietors have undoubtedly learned much the same.

1.2 Case History

As mentioned above, Brownmark filed this case in November of 2010, after which time they filed an amended complaint in January of 2011. (Docket #1, # 6).

In February 2011, the defendants filed a motion to dismiss. (Docket #8). In their brief in support of that motion, the defendants argued that Brownmark lacked standing to prosecute the action. (Def.'s Br. in Supp., 9–10). The defendants also argued that the South Park replica was parody, and thus protected as fair use. (Def.'s Br. in Supp., at 10–21).

Brownmark filed their response in March of 2011, arguing that they had standing to sue and also that the defendants' Motion to Dismiss was improper, due to its being based on an affirmative defense. (Pl.'s Resp., 1–5). Brownmark's response was devoted primarily to the latter point, and did not

directly respond to the defendants' claims of fair use. (Pl.'s Resp., at 3–5). The defendants then took these arguments up in their reply brief, urging the Court to decide the fair use issue at the pleading stage.

The Court did just that in its July 6, 2011 order. After finding that Brownmark had standing to sue, the Court addressed the separate procedural and substantive issues of the defendants' fair use argument. On the procedural side of the issue, the Court held that it could address the defendants' affirmative defense of fair use at the pleading stage, because Brownmark's complaint and centrally-related materials "set forth everything necessary to satisfy the affirmative defense." (Order Granting Mot. Dismiss, 13 (quoting *Brooks v. Ross*, 578 F.3d 574, 579 (7th Cir. 2009))). The Court noted that the evaluation of an affirmative defense at the pleading stage is "'irregular.'" (*Id.*, at 14 (quoting *Chicago Bd. of Educ. v. Substance, Inc.*, 354 F.3d 624, 627 (7th Cir. 2003))). But, in the end, the Court decided to address the issue, concluding that the dispute "'simply does not warrant putting the defendant through the expense of discovery,'" when considering that the entire dispute between the parties could be solved much more efficiently by resolving the substantive underlying issue at the pleading stage. (Order Granting Mot. Dismiss, 14 (quoting *Atkins v. City of Chicago*, 631 F.3d 823, 832 (7th Cir. 2011))).

Thus, the Court turned to the substantive fair use issue, and concluded that the case should be dismissed at the pleading stage, because the defendants' work is entitled to fair use protection. (Order Granting Mot. Dismiss, 19). In reaching its decision, the Court found that the factors of fair use weighed in favor of the defendants: (1) the "purpose and character" of the South Park replica was both a parody and also transformative of the

original; (2) the nature of the copyrighted work—while copied in some ways—was of little help to the Court, because the South Park version was a parody, the nature of which practically requires the copying of a publicly-known work; (3) the South Park version, in fact, used relatively little of the original copyrighted work, and did not mirror the original; and (4) the South Park version is unlikely to usurp any of the market demand for the original. (*Id.*, at 17–19).

For those reasons, the Court held that the defendants' use was fair. (Ord. Granting Mot. Dismiss, at 19). Thus, their work was protected by that affirmative defense, and the Court dismissed Brownmark's claims with prejudice. (Ord. Granting Mot. Dismiss, at 20). Brownmark has appealed the Court's decision to the United States Court of Appeals for the Seventh Circuit. (Docket # 26–30).

Meanwhile, the defendants' Motion for Attorney Fees and Costs still remains before this Court. (Docket #34). On August 3, 2011, Brownmark filed both a request for adversary submissions and its response to the defendants' motion on the fees and costs issue. (Docket #36, #37). The defendants then filed their reply brief, on August 17, 2011. (Docket #38). Afterward, on August 23, 2011, Brownmark submitted a flurry of documents: two motions and a reply, all of which are related to the issue of attorney fees. (Docket #39, #40, #41). Finally, on August 30, 2011, the defendants submitted a brief opposing Brownmark's three August 23, 2011 filings. (Docket #42).

By order, on September 27, 2011, the Court struck what it deemed to be an unauthorized sur-reply brief submitted by Brownmark. (Docket #43). The Court also ordered that the parties submit briefs addressing the defendants' objections to several pieces of evidence submitted by

Brownmark in support of their opposition to defendants' request for attorneys' fees. (Docket #43).

2. Analysis

In order that it can make its fees decision on the appropriate record, the Court will first resolve the defendants' objections to the evidence submitted by Brownmark. After addressing those objections, the Court will move to the defendants' motion for attorneys' fees.

2.1 Defendants' Evidentiary Objections

On August 23, 2011, Brownmark filed three separate documents. The Court has already addressed one of those documents: Brownmark's unauthorized sur-reply brief. (*See* Docket #43 (disregarding Docket #41)). As discussed above, by its September 27, 2011 order, the Court effectively struck Brownmark's unauthorized sur-reply. (Docket #43). By the same order, the Court also requested that the parties brief the issue of the defendants' objections to several of Brownmark's evidentiary submissions. (Docket #43). Having received the parties' briefs, the Court will now address that issue.

The defendants argue that the Court should strike portions of declarations submitted by Brownmark's attorneys, Caz McChrystal ("McChrystal") and Bobby Ciraldo ("Ciraldo"). (Docket #44: Def.'s Mem. in Supp. Obj. Ev. at 1). Specifically, with regards to the McChrystal declaration, the defendants object to the fact that McChrystal included legal analysis and conclusions in his declaration, as support for Brownmark's contention that their position was reasonable.

The Court agrees and will, therefore, strike paragraphs five through twenty-six of McChrystal's declaration. Those paragraphs are replete with legal conclusions and references to case law, all of which appear to be

intended to bolster Brownmark's legal argument that their position was reasonable. (McChrystal Decl. ¶¶ 5–26). While the Court understands McChrystal's desire to set forth facts that establish his reliance on case law, the Court believes that statements like McChrystal's are much better suited to a legal brief. In fact, if McChrystal merely relied on his statements to establish the *fact* that he relied on certain cases or statutes, the Court would be inclined to allow his declaration to stand. But, instead, in his declaration, McChrystal goes so far as to address arguments made by the defendant (*see, e.g.*, McChrystal Decl. ¶ 7, 14), apply the fair use factors and case law to Brownmark's claim (*see, e.g.*, McChrystal Decl. ¶¶ 12, 13, 20, 23), and make further legal accusations against the defendants (*see, e.g.*, McChrystal Decl. ¶ 15 ("the Defendants did not more than use the WWITB video in a humorous fashion to poke fun at the viral video phenomenon, Internet celebrity, and …[the] musical composition"), ¶ 18 ("the Defendants' use of the WWITB video is not of a strong transformative nature"). He does all of this without ever making a prefatory statement that he is merely establishing the fact that he researched and relied upon the cited arguments and cases in reaching a decision to bring a claim.

Therefore, the Court agrees with the defendants, and finds that paragraphs five through twenty-six of McChrystal's declaration contain improper legal conclusions and argumentation that are impermissible in an declaration. (Def.'s Mot. in Supp. Obj. Ev. 2–3 (citing *Chen v. Mayflower Transit*, 315 F. Supp. 2d 886, 923 (N.D. Ill. 2004), *Vasquez v. Central States Joint Board*, 2006 U.S. Dist. LEXIS 11355, at *31–*32 (N.D. Ill. March 15, 2006))). As such, the Court is obliged to strike paragraphs five through twenty-six of McChrystal's declaration. (Docket #37, Ex. A).

The Court next turns to the defendants' objections to Ciraldo's declaration. The defendants object on multiple grounds, and the Court will address each objection by the defendants' legal argument against it: first, hearsay; second, best evidence rule; third, relevance; fourth speculation; and, fifth, defendants' specific argument against Ciraldo's side-by-side comparison of the WWITB with South Park's version.

First, with relation to defendants' hearsay objections, the Court will not strike Ciraldo's statements. Brownmark argues that each of the statements to which the defendants object are asserted to show that Brownmark filed its suit as a result of its belief that an active market existed for its work, leading Brownmark to its conclusion that it had not received fair compensation for the defendants' use of the WWITB video. (Pl. Resp. Obj. Ev. 6). That fact, Brownmark asserts, shows that it did not have an improper motive for filing the case. (Pl. Resp. Obj. Ev. 6). The Court agrees: Ciraldo's declaration references statements of others that show specific instances of other attempts or interest in licensing the WWITB video. But, Brownmark is not relying on those statements to show that specific parties had made requests to license the WWITB video; rather, Brownmark uses Ciraldo's statements to show a general demand in the market and that Brownmark had a proper motive to bring this suit. As such, the Court will not strike paragraphs six, seven, eleven, fourteen, or sixteen, as being improper hearsay.

Second, the Court turns to the defendants' best evidence rule objections to paragraphs six, seven, eight, ten, twelve, sixteen, and eighteen; the Court overrules those objections, as well. The best evidence rule requires that original versions of documents be submitted *if* the contents of those

documents are being admitted. *See* Fed. R. Ev. 1002, 1004. The defendants' objections hit a snag due to the fact that Brownmark does not rely on the contents of the documents it discusses, but, as above, discusses those documents in arguing that an active market existed for the WWITB video. Therefore, the lack of original documents does not create best evidence rule problems.

Third, the Court addresses the defendants' relevance objections to paragraphs six, seven, and eleven. (Def. Mem. Supp. Obj. Ev. 6). The defendants argue that licensing agreements with outside parties are irrelevant, but the Court disagrees. A portion of the inquiry into whether to award attorneys' fees requires the Court to consider whether Brownmark acted reasonably in brining this suit. As already discussed, evidence of an active market may factor into the Court's determination as to whether it was reasonable for Brownmark to bring this suit. As such, the Court finds paragraphs six, seven, and eleven relevant to the issue at hand, and will not strike those portions of Ciraldo's declaration.

Fourth, the Court examines and agrees with Brownmark's argument that the defendants placed Brownmark's subjective motivations at issue and, thus, the personal beliefs of Ciraldo is admissible. (Pl. Resp. Obj. Ev. 8–9). The defendants have argued that Brownmark's motivation is "questionable" (Def. Mem. Atty. Fee 9–10); as such, Ciraldo's statements regarding his personal beliefs should be admitted as probative of his motivation as a member of Brownmark. While the Court will treat those statements cautiously, as Ciraldo's credibility may be questioned as an interested party, the Court will not strike them.

Finally, with regard to the defendants' *Miracle Blade* argument that Ciraldo's side-by-side comparison of the two works in question (Ciraldo Decl. ¶ 35, App. 1), the Court finds no reason to strike Ciraldo's comparison. In that case, the court objected to—but ultimately admitted—a summary comparison between two works. *Miracle Blade, LLC v. Ebrands Commerce group, LLC*, 207 F. Supp. 2d 1136, 1145–1146 (D. Nev. 2002). But, there, the court's objection to the summary was that the defendants had not complied with Rule 1006 of the Federal Rules of Evidence by submitting a copy to the other party prior to its admission. *Id.*, at 1146. The Court ultimately admitted the summary, though, because the plaintiff had "sufficient opportunity and notice to attempt to retrieve [the] materials." *Id.* The only portion of the summary that the court in that case struck was a legal conclusion stated by the declarant. *Id.*, at 1145 (stating that the summary "clearly shows that there is no copyright infringement").

*Miracle Blade* does not require that the Court strike Ciraldo's side-by-side summary comparison. To begin, the defendants have not argued that any of Ciraldo's comparison reaches an improper legal conclusion. Further, the defendants have not made a Rule 1006 objection to the comparison, which would seem to be the proposition for which *Miracle Blade* stands most strongly. *See id.*, at 1146. Even so, the Court sides with the *Miracle Blade* decision, finding that—even if there were a Rule 1006 problem—the defendants have viewed and acknowledged the similarities between the two videos on multiple occasions. In fact, the similarities between the videos is at the heart of this lawsuit. A summary of the similarities does not disservice the defendants and, therefore, the Court will not strike Ciraldo's side-by-side comparison. (Ciraldo Decl., App. 1).

To summarize, the Court strikes paragraphs five through twenty-six of McChrystal's declaration, but leaves Ciraldo's declaration fully intact.

2.2 Defendants' Entitlement to Attorneys' Fees and Costs

Having decided the record upon which to determine the issue of attorneys' fees, the Court now turns its attention to that matter.

The Copyright Act grants courts discretion to award reasonable attorneys' fees and costs to prevailing parties in civil copyright actions. 17 U.S.C. § 505. In determining whether to exercise that discretion and award costs and fees, the Court may look to a number of nonexclusive factors accepted by the Supreme Court: (1) the objective unreasonableness of the action; (2) the losing party's motivations for filing or contesting the action; (3) the frivolousness of the action; and (4) the need to "advance considerations of compensation and deterrence." *Fogerty v. Fantasy, Inc.*, 510 U.S. 517, 535 n. 19 (1994) (quoting *Lieb v. Topstone Industries, Inc.*, 788 F.2d 151, 156 (3rd Cir. 1986) (internal quotations omitted)).

The Seventh Circuit has refined this standard further. According to the Seventh Circuit, the "two most important [of these] considerations…are the strength of the prevailing party's case and the amount of damages or other relief the party obtained." *Assessment Techs. of Wisconsin, LLC v. Wire Data, Inc.*, 361 F.3d 434, 436 (7th Cir. 2004). Furthermore, the Seventh Circuit has specifically noted that, while "prevailing plaintiffs and prevailing defendants are to be treated alike," the presumption in favor of awarding fees to a prevailing defendant is "very strong." *Id.*, at 436–37 (refining *Fantasy*, 510 U.S. at 534; citing *Diamonds Star Building Corp. v. Freed*, 30 F.3d 536, 506 (4th Cir. 1994)).

Applying the factors discussed by the Supreme Court, taken in conjunction with the Seventh Circuit's presumption in favor of prevailing defendants, the Court finds that the defendants' are entitled to attorneys' fees and costs.

To begin, the defendants' fair-use argument was very strong, and Brownmark's legal position was objectively unreasonable. The Court took the somewhat rare step of deciding this case at the motion to dismiss stage, precisely because the defendants' fair-use defense was so strong, satisfying all four fair-use factors. First, the Court found that South Park's work was a "clear" parody, which one could gather quickly and easily from watching the episode. Second, South Park's version of the video was transformative, using the series' own characters and a different recording of the song, even if the words and images were similar. Third, even with those similarities, South Park made many changes to the form of the original and used only enough lines to conjure up the original. South Park's use was insubstantial. And, fourth, the Court found that South Park's version of the video would not usurp the market for Brownmark's original. In fact, in this respect, it is most likely that South Park's use would have spurred demand for the original, making the viral video's spread more rapid after its exposure to a national television audience. The satisfaction of these factors shows that the defendants' case was very strong.

Inquiring further, the Court finds that Brownmark's legal positions were also objectively unreasonable, and thus their position was frivolous. To this Court, there is little that could justify the plaintiff's stated view that the South Park version was not parody. Brownmark argues that South Park's clip could be viewed as satire, and would thus require a heightened amount

of transformation to be a fair use. (*See* Pl.'s Resp. Atty. Fee 8–9 (citing *Campbell v. Acuff-Rose Music,* 510 U.S. 569, 580 (1994))). This argument fails for two reasons. Not only was South Park's video a parody, but South Park substantially transformed its version from the original. South Park did not directly copy Brownmark's original video and insert it into the episode;[2] rather, South Park created a video that purposefully mocked the obscure images and song of the original, all in an attempt to poke fun at the original, its viral popularity, and internet crazes as a whole. It may have been intended partially as satire, but also clearly encompassed elements of parody. And, further, given the transformative nature of the use and the lampooning Brownmark's original received, there is ample reason to believe that South Park's use would have greater spurred the market for the original. In the internet era, with information freely and quickly accessible, viewers interested in South Park's version could turn to the internet to find a copy of the original. And any confusion over which version was the original could be supplied to online viewers through a statement at the video's web page. For all of these reasons, the Court finds that Brownmark was objectively unreasonable in its position that South Park's use was not fair.

---

[2]Brownmark argues that the defendants' produced a "near-verbatim copy, merely compressed in time and swapping out the original singer for a different one." The Court would add that these changes are substantial. While the words may be practically verbatim, there are few words to begin with. Further, particularly important in the eyes of the Court is the fact that the different singer is a very young cartoon character. These two major differences change the nature of the video, from one that is patently absurd, to one that parodies the original by creating an even more absurd product. Despite any shot-for-shot similarities, as has been catalogued by Ciraldo (Ciraldo Decl., App. 1), the Court finds that these changes make the use very transformative.

Further, the Court is convinced that Brownmark's motivation in filing this suit was questionable. Not only was Brownmark's position unreasonable, but it also waited nearly two years to file a lawsuit, only after being repeatedly rejected with warnings that South Park's use was copyrighted. (Docket #34, Ex. B). This demonstrates an attempt by Brownmark to use the threat of litigation against the defendants as a sort of "sword of Damocles"—hanging by a thread over the heads of the defendants while Brownmark attempted to extract a licensing fee. Of course, when the thread finally snapped and Brownmark brought this action, the parties quickly found the "sword" to be nothing more than a flimsy replica, as the Court dismissed the case outright at its earliest stage.

Next, the Court also must note that an award of attorneys' fees in this case will deter future actions by those similar to Brownmark; the Court is not entirely comfortable with this fact, though. The defendants in this case are sophisticated business entities with worldwide connections. Brownmark, on the other hand, is a very small company which can hardly bear the same costs as the defendants. Therefore, the Court must walk a fine line between one side of protecting the rights of defendants to parody others' works without being dragged into the legal muck for unreasonable claims and the other side of steering away from effectively robbing smaller plaintiffs of their artistic rights in their own work. While Brownmark's legal action was unreasonable, the Court fears that imposing financial ruination on a small company, like Brownmark, for an attempt to protect its rights might result in similarly-situated plaintiffs with stronger claims refraining from enforcement.

Despite that potential, though, the Court finds that an award of attorneys' fees in this case would deter future action that is similar to Brownmark's. As to the risk of keeping small plaintiffs out of court, the Court notes two things: first, that as important as those plaintiffs' artistic rights may be, the freedom of speech is perhaps of greater concern; and, second, that plaintiffs will not be subject to these fees if they engage in meaningful settlement talks before bringing their suit, work to resolve the case without court intervention, and reasonably consider the defendants' potential defenses.

Because the Court finds that all of the Supreme Court's factors are met, the defendants are entitled to attorneys' fees and costs in this case. This conclusion is strengthened by the Seventh Circuit's presumption that prevailing defendants are entitled to such fees and costs. *Assessment Techs.*, 361 F.3d at 436.

2.3 Reasonableness of Costs and Fees

In total, the defendants request $46,775.23 in attorneys' fees. Of that amount, approximately $3,500 was spent on initial discussions with the defendant parties and drafting the defendants' letter response to Brownmark (Docket #34, Ex. I at 39–43 (Billing Periods for Sep. 30, 2008, and Oct. 31, 2008)); another $7,500 was billed for reviewing the law, Brownmark's complaint, and potential strategies prior to filing a motion to dismiss (Docket #34, Ex. I at 43–51 (Billing Periods for Oct. 31, 2008, Feb. 28, 2009, and Dec. 31, 2010)); then $17,000 was billed for the preparation and filing of the defendants' motion to dismiss (Docket #34, Ex. I at 52–60 (Billing Periods for Jan. 31, 2011, and Feb. 28, 2011)); and, finally, approximately $9,500 was spent in preparation of the defendants' reply brief and other administrative matters

(Docket #34, Ex. I at 61–70 (Billing Periods for March 31, 2011, April 30, 2011, May 30, 2011, and June 30, 2011)); additional related services, provided by local counsel, also contributed approximately $10,000 to the final sum requested by the defendants (Docket #34, Ex. J).

The total calculation provided by the defendants, or the lodestar figure, is presumptively reasonable when the party seeking attorneys' fees has shown the rate and number of hours worked is reasonable. *Blum v. Stenson*, 465 U.S. 886, 897 (1984).

Brownmark does not dispute the reasonableness of the rates charged by the defendants' attorneys, but takes issue with a good portion of the hours worked by the defendants' attorneys. The Court finds those objections unpersuasive. Brownmark first argues that pre-suit costs cannot be awarded under Section 505. But Brownmark cites only its own interpretation of the language in that statute and a case that does not seem to support the proposition. (Pl.'s Resp. Atty. Fee 18–19 (citing *Lenz v. Universal Music Corp.*, 2010 U.S. Dist. LEXIS 125874 (N.D. Cal. 2010))). The Court believes that the defendants advocate a wiser course: allowing recovery of pre-suit fees. (Def.'s Reply Atty. Fee 11–12). In contrast to Brownmark, the defendants have cited ample case law that supports the imposition of pre-suit fees, including in a case similar to this one. (Def.'s Reply Atty. Fees 11–12 (citing *Mattel, Inc. v. MGA Entm't, Inc.*, 2011 U. S. Dist. LEXIS 85998 (C.D. Cal. August 4, 2011) and other non-copyright cases)).

Next, Brownmark argues that any hours worked that were not catalogued as specifically related to the defendants' fair use argument should be treated as inadequately documented and, therefore, not charged to Brownmark. (Pl.'s Resp. Atty. Fees 19–20 (citing *Ohio-Sealy Mattress Mfg. Co.*

*v. Sealy, Inc.*, 776 F.2d 646, 651 (7th Cir. 1985), *Buckhannon Board & Care Home, Inc. v. West Virginia Dept. of Health and Human Resources*, 532 U.S. 598, 604 (2001))). According to Brownmark, the defendants' fees that are attributable to the fair use argument amount to less than $10,000. (Pl.'s Resp. Atty Fees 20). Again, though, the defendants have the best of the argument: the "central issue" of this entire litigation was the fair use issue. That issue consumed much of the pre-lawsuit discussions and a large chunk of the briefs filed on the motion to dismiss.

While the Court disagrees with Brownmark's arguments for docking the reasonable number of hours worked, the Court will, nonetheless, dock that number of hours as unduly duplicative. After reviewing the initial letter sent by the defendants to Brownmark, the defendants' brief in support of their motion to dismiss, and the defendants' reply brief on that matter, the Court determines that the defendants' attorneys were able to reuse significant portions of their research in preparing each item. As such, the Court finds that the defendants billed an unreasonable number of hours in the preparation of each of those items. Accordingly, the Court docks one-half of the number of hours spent in preparation of the brief in support and the reply brief, effectively reducing the total fee by approximately $12,750. The Court also finds that approximately one-half of local counsel's time was spent in preparation of the same materials, and docks one-half of that amount, or approximately $2,500. In sum, the Court docks approximately $15,250 of the total $46,775.23 sought by the defendants, leaving $31,525.23.

However, the Court will also exercise its discretion and limit Brownmark's fee liability to a much smaller amount than even the reduced $31,525.23 figure. Despite all that has come before in this case, the Court

remains cognizant of the fact that Brownmark is a very small entity, without extensive assets. The Court has discretion in determining an award of attorneys' fees under Section 505, and may exercise that discretion to reduce a fee, taking into account the financial circumstances of a party. *Sassower v. Field*, 973 F.2d 75, 81 (2d Cir. 1992), *Lieb v. Topstone Indus., Inc.*, 788 F.2d 151, 156 (3d Cir. 1986), *Quaglia v. Bravo Networks*, 2006 U.S. Dist. LEXIS 67123, at *5 (D. Mass. Sep. 19, 2006), *Polsby v. St. Martin's Press, Inc.*, 2000 U.S. Dist. LEXIS 596, at *7 (S.D.N.Y. Jan. 18, 2000), *Littel v. Twentieth-Century Fox Film Corp.*, 1996 U.S. Dist. LEXIS 454, at *3 (S.D.N.Y. Jan. 17, 1996). "[T]he aims of the Copyright Act are compensation and deterrence where appropriate, but not ruination." *Lieb*, 788 F.2d at 156.

Thus, the Court will impose a fee that is lower than the $31,525.23 reasonable amount; this final fee will be tied to Brownmark's size and ability to pay. However, as the plaintiff has not submitted any documentation of its assets and ability to pay attorneys' fees, the Court requests that Brownmark submit such documentation under seal (including relevant information such as account balances, value of the company, salaries of the proprietors, any additional sources of income or substantial assets held by the proprietors, and the debts of both Brownmark and the individual proprietors). Accompanying that submission, Brownmark shall include a short statement and calculation regarding the fees it believes it is able to pay without causing bankruptcy. Cognizant of the already-substantial amount of submissions in this case—particularly as relates to the issue of attorneys' fees—the Court will allow, but not require, the defendants to respond to that submission with a similarly brief statement, also to be filed under seal, addressing the plaintiff's calculated amount.

3. Conclusion

For the foregoing reasons—fully considering all of the appropriate evidence, the arguments of the parties, the purposes of this country's copyright laws, Brownmark's financial situation, and the Court's own discretion under the law—the Court will grant an award of attorneys' fees and costs to the defendants, but will dock that award by an amount to be determined following further submission by the parties.

Accordingly,

IT IS ORDERED that the defendants' motion for attorneys' fees and costs (Docket #34) be and the same is hereby GRANTED;

IT IS FURTHER ORDERED that the plaintiff shall submit an affidavit detailing its financial status and an accompanying brief, which shall not exceed three (3) pages, by December 20, 2011; and

IT IS FURTHER ORDERED that the defendants may submit a responsive brief, which shall not exceed three (3) pages, by December 30, 2011; if the defendants do not wish to file a responsive brief, they shall submit documentation to the Court notifying it of such decision.

Dated at Milwaukee, Wisconsin, this 30th day of November, 2011.

BY THE COURT:

J.P. Stadtmueller
U.S. District Judge